FILED

CA 13 - 505 S

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

2013 JUL 2 P 1: 36

Civil Action No.: 13-CV

**VERIFIED COMPLAINT**

**JURY TRIAL DEMANDED**

Cheryl D. Uzamere

U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

Plaintiff,

- against -

United States of America

- and -

The Honorable Barack H. Obama, Individually and in His Official Capacity as President of the United States of America; the Honorable Keith B. Alexander, Individually and in His Official Capacity as Director of the National Security Agency; Rajesh De, Individually, and in His Official Capacity as General Counsel for the National Security Agency; National Security Agency; Andrew Weissman, Individually and in His Official Capacity as General Counsel for the Federal Bureau of Investigation; James X. Dempsey, Individually and in His Official Capacity as Member, Privacy and Civil Liberties Oversight Board; Elisebeth Collins Cook, Individually and in Her Official Capacity as Member, Privacy and Civil Liberties Oversight Board; David Medine, Individually and in His Official Capacity as Chairman, Privacy and Civil Liberties Oversight Board; Rachel L. Brand, Individually and in His Official Capacity as Member, Privacy and Civil Liberties Oversight Board, Patricia M. Wald, Individually and in His Official Capacity as Member, Privacy and Civil Liberties Oversight Board, Nicholas G. Garaufis, Individually and in His Official Capacity as Judge, U.S. District Court for the Eastern District of New York; Dennis Jacobs, Individually and in His Official Capacity as Chief Judge, U.S. Court of Appeals for the Second Circuit; Jon O. Newman, Individually and in His Official Capacity as Judge for the U.S. Court of Appeals for the Second Circuit; Amalya L. Kearse, Individually and in Her Official Capacity as Judge for the U.S. Court of Appeals for the Second Circuit; Ralph K. Winter, Individually and in His Official Capacity as Judge for the U.S. Court of Appeals for the Second Circuit; John M. Walker, Jr., Individually and in His Official Capacity as Judge for the U.S. Court of Appeals for the Second Circuit; Joseph M. McLaughlin, Individually and in His Official Capacity as

The basis of venue: 28 USC §1404(a), stipulation to change venue. If refused, basis is 28 USC §455(b)(5)(i) and 28 USC §144, judges are defendants, and Defendant judges enforce halachic law on the backs of inexperienced *pro se* litigants. The majority of judges in 2nd Circuit are Jewish, adherents of halachic law, and/or pro Jew-biased.



Plaintiff's innocent children David P. Walker and Tara A. Uzamere are victims of Nigerian Senator Ehigie E. Uzamere, and Jewish immigration attorneys Allen E. Kaye, Harvey Shapiro, Jack Gladstein, Osato E. Uzamere and Ehigie Edobor Uzamere. The financial and social benefits entitled to them based on bearing the correct name of Plaintiff's husband's were and continue to be withheld from them.

Judge for the U.S. Court of Appeals for the Second
Circuit; Pierre N. Leval, Individually in His Official
Capacity as Judge for the U.S. Court of Appeals for the
Second Circuit; Guido Calabresi, Individually and in His
Official Capacity as Judge for the U.S. Court of Appeals
for the Second Circuit; José A. Cabranes, Individually
and in His Official Capacity as Judge for the U.S. Court
of Appeals for the Second Circuit; Chester J. Straub,
Individually and in His Official Capacity as Judge for the
U.S. Court of Appeals for the Second Circuit; Rosemary
S. Pooler, Individually and in Her Official Capacity as
Judge for the U.S. Court of Appeals for the Second
Circuit; Robert D. Sack, Individually and in His Official
Capacity as Judge for the U.S. Court of Appeals for the
Second Circuit; Robert A. Katzmann, Individually and in
His Official Capacity as Judge for the U.S. Court of
Appeals for the Second Circuit; Barrington D. Parker,
Individually and in His Official Capacity as Judge for the
U.S. Court of Appeals for the Second Circuit; Reena
Raggi,  Individually and in Her Official Capacity as
Judge for the U.S. Court of Appeals for the Second
Circuit; Richard C. Wesley, Individually and in His
Official Capacity as Judge for the U.S. Court of Appeals
for the Second Circuit; Peter W. Hall,  Individually and
in His Official Capacity as Judge for the U.S. Court of
Appeals for the Second Circuit; Debra Ann Livingston,
Individually and in Her Official Capacity as Judge for the
U.S. Court of Appeals for the Second Circuit; Gerard E.
Lynch, Individually and in His Official Capacity as Judge
for the U.S. Court of Appeals for the Second Circuit;
Denny Chin, Individually and in His Official Capacity as
Judge for the U.S. Court of Appeals for the Second
Circuit; Raymond J. Lohier, Jr., Individually and in His
Official Capacity as Judge for the U.S. Court of Appeals
for the Second Circuit; Susan L. Carney,  Individually
and in Her Official Capacity as Judge for the U.S. Court
of Appeals for the Second Circuit; Christopher F.
Droney,  Individually and in His Official Capacity as
Judge for the U.S. Court of Appeals for the Second
Circuit; Carol Bagley Amon, Individually and in Her
Official Capacity as Chief Judge for the U.S. District
Court for the Eastern District of New York; Frederic
Block, Individually and in His Official Capacity as Judge
for the U.S. District Court for the Eastern District of New

**- Page 2 of 177 -**

York; Joseph F. Bianco, Individually and in His Official Capacity as Judge for the U.S. District Court for the Eastern District of New York; Margo K. Brodie, Individually and in Her Official Capacity as Judge for the U.S. District Court for the Eastern District of New York; Brian M. Cogan, Individually and in His Official Capacity as Judge for the U.S. District Court for the Eastern District of New York; Raymond J. Dearie, Individually and in His Official Capacity as Judge for the U.S. District Court for the Eastern District of New York; Sandra J. Feuerstein, Individually and in His Official Capacity as Judge for the U.S. District Court for the Eastern District of New York; Nina Gershon, Individually and in Her Official Capacity as Judge for the U.S. Court for the Eastern District of New York; I. Leo Glasser, Individually and in His Official Capacity as Judge for the U.S. District Court for the Eastern District of New York; John Gleeson, Individually and in His Official Capacity as Judge for the U.S. District Court for the Eastern District of New York; Denis R. Hurley, Individually and in His Official Capacity as Judge for the U.S. District Court for the Eastern District of New York; Dora L. Irizarry, Individually and in Her Official Capacity as Judge for the U.S. District Court for the Eastern District of New York; Sterling Johnson, Jr., Individually and in His Official Capacity as Judge for the U.S. District Court for the Eastern District of New York; Edward R. Korman, Individually and in His Official Capacity as Judge for the U.S. District Court for the Eastern District of New York; Kiyo A. Matsumoto, Individually and in His Official Capacity as Judge for the U.S. District Court for the Eastern District of New York; William F. Kuntz, Individually and in His Official Capacity as Judge for the U.S. District Court for the Eastern District of New York; Roslynn R. Mauskopf, Individually and in His Official Capacity as Judge for the U.S. District Court for the Eastern District of New York; Allyne R. Ross, Individually and in His Official Capacity as Judge for the U.S. District Court for the Eastern District of New York; Thomas C. Platt, Individually and in His Official Capacity as Judge for the U.S. District Court for the Eastern District of New York; Joanna Seybert, Individually and in Her Official Capacity as Judge for the U.S. District Court for the Eastern District

of New York; Arthur D. Spatt, Individually and in His
Official Capacity as Judge for the U.S. District Court for
the Eastern District of New York; Sandra L. Townes,
Individually and in His Official Capacity as Judge for the
U.S. District Court for the Eastern District of New York;
Eric N. Vitaliano, Individually and in His Official
Capacity as Judge for the U.S. District Court for the
Eastern District of New York; Jack B. Weinstein,
Individually and in His Official Capacity as Judge for the
U.S. District Court for the Eastern District of New York;
Leonard D. Wexler, Individually and in His Official
Capacity as Judge for the U.S. District Court for the
Eastern District of New York; Ronnie Abrams,
Individually and in His Official Capacity as Judge for the
U.S. District Court for the Southern District of New
York; Harold Baer, Individually and Individually and in
His Official Capacity as Judge for the U.S. District Court
for the Southern District of New York; Deborah A. Batts,
Individually and in Her Southern District of New York;
Richard M. Berman, Individually and in His Official
Capacity as Judge for the U.S. District Court for the
Southern District of New York; Vincent L. Briccetti,
Individually and in His Official Capacity as Judge for the
U.S. District Court for the Southern District of New
York; Naomi Reice Buchwald, Individually and in Her
Official Capacity as Judge for the U.S. District Court for
the Southern District of New York; Andrew L. Carter, Jr.,
Individually and in His Official Capacity as Judge for the
U.S. District Court for the Southern District of New
York; P. Kevin Castel, Individually and in His Official
Capacity as Judge for the U.S. District Court for the
Southern District of New York; Miriam Goldman
Cedarbaum, Individually and in Her Official Capacity as
Judge for the U.S. District Court for the Southern District
of New York; Denise L. Cote, Individually and in Her
Official Capacity as Judge for the U.S. District Court for
the Southern District of New York; Paul A. Crotty,
Individually and  in His Official Capacity as Judge for
the U.S. District Court for the Southern District of New
York; George B. Daniels, Individually and in His Official
Capacity as Judge for the U.S. District Court for the
Southern District of New York; Kevin T. Duffy,
Individually and in His Official Capacity as Judge for the
U.S. District Court for the Southern District of New

York; Paul A. Engelmayer, Individually and in His
Official Capacity as Judge for the U.S. District Court for
the Southern District of New York; Katherine B Forrest,
Individually and in Her Official Capacity as Judge for the
U.S. District Court for the Southern District of New
York; Jesse M. Furman, Individually and in His Official
Capacity as Judge for the U.S. District Court for the
Southern District of New York; Paul G. Gardephe,
Individually and in His Official Capacity as Judge for the
U.S. District Court for the Southern District of New
York; Thomas P. Griesa, Individually and in His Official
Capacity as Judge for the U.S. District Court for the
Southern District of New York; Charles S. Haight,
Individually and in His Official Capacity as Judge for the
U.S. District Court for the Southern District of New
York; Alvin K. Hellerstein, Individually and in His
Official Capacity as Judge for the U.S. District Court for
the Southern District of New York; Lewis A. Kaplan,
Individually and in His Official Capacity as Judge for the
U.S. District Court for the Southern District of New
York; Kenneth M. Karas, Individually and in His Official
Capacity as Judge for the U.S. District Court for the
Southern District of New York; John F Keenan,
Individually and in His Official Capacity as Judge for the
U.S. District Court for the Southern District of New
York; John G. Koeltl, Individually and in His Official
Capacity as Judge for the U.S. District Court for the
Southern District of New York; Victor Marrero,
Individually and in His Official Capacity as Judge for the
U.S. District Court for the Southern District of New
York; Colleen McMahon, Individually and in Her
Official Capacity as Judge for the U.S. District Court for
the Southern District of New York; Alison J. Nathan,
Individually and in His Official Capacity as Judge for the
U.S. District Court for the Southern District of New
York; J. Paul Oetken, Individually and in His Official
Capacity as Judge for the U.S. District Court for the
Southern District of New York; Richard Owen,
Individually and in His Official Capacity as Judge for the
U.S. District Court for the Southern District of New
York; Robert P. Patterson, Individually and in His
Official Capacity as Judge for the U.S. District Court for
the Southern District of New York; William H. Pauley,
Individually and in His Official Capacity as Judge for the

U.S. District Court for the Southern District of New York; Loretta A. Preska, Individually and in Her Official Capacity as Chief Judge for the U.S. District Court for the Southern District of New York; Jed S. Rakoff, Individually and in His Official Capacity as Judge for the U.S. District Court for the Southern District of New York; Edgardo Ramos, Individually and in His Official Capacity as Judge for the U.S. District Court for the Southern District of New York; Leonard B Sand, Individually and in His Official Capacity as Judge for the U.S. District Court for the Southern District of New York; Shira A. Scheindlin, Individually and in His Official Capacity as Judge for the U.S. District Court for the Southern District of New York; Cathy Seibel, Individually and in His Official Capacity as Judge for the U.S. District Court for the Southern District of New York; Louis L. Stanton, Individually and in His Official Capacity as Judge for the U.S. District Court for the Southern District of New York; Sidney H. Stein, Individually and in His Official Capacity as Judge for the U.S. District Court for the Southern District of New York; Richard J Sullivan, Individually and in His Official Capacity as Judge for the U.S. District Court for the Southern District of New York; Laura Taylor Swain, Individually and in His Official Capacity as Judge for the U.S. District Court for the Southern District of New York; Robert W. Sweet, Individually and in His Official Capacity as Judge for the U.S. District Court for the Southern District of New York; Kimba M. Wood, Individually and in Her Official Capacity as Judge for the U.S. District Court for the Southern District of New York; Steven M. Gold, Individually and in His Official Capacity as Chief Magistrate Judge for the U.S. District Court for the Eastern District of New York; Joan M. Azrack, Individually and in Her Official Capacity as Magistrate Judge for the U.S. District Court for the Eastern District of New York; Lois Bloom, Individually and in Her Official Capacity as Magistrate Judge for the U.S. District Court for the Eastern District of New York; E. Thomas Boyle, Individually and in His Official Capacity as Magistrate Judge for the U.S. District Court for the Eastern District of New York; Gary R. Brown, Individually and in His Official Capacity as Magistrate Judge for the U.S. District Court for the Eastern District

of New York; Marilyn D. Go, Individually and in Her Official Capacity as Magistrate Judge for the U.S. District Court for the Eastern District of New York; Robert M. Levy, Individually and in His Official Capacity as Magistrate Judge for the U.S. District Court for the Eastern District of New York; Arlene R. Lindsay, Individually and in Her Official Capacity as Magistrate Judge for the U.S. District Court for the Eastern District of New York; Roanne L. Mann; Individually and in Her Official Capacity as Magistrate Judge for the U.S. District Court for the Eastern District of New York; James Orenstein, Individually and in Her Official Capacity as Magistrate Judge for the U.S. District Court for the Eastern District of New York; Viktor V. Pohorelsky; Individually and in His Official Capacity as Magistrate Judge for the U.S. District Court for the Eastern District of New York; Cheryl L. Pollak, Individually and in Her Official Capacity as Magistrate Judge for the U.S. District Court for the Eastern District of New York; Vera M. Scanlon, Individually and in Her Official Capacity as Magistrate Judge for the U.S. District Court for the Eastern District of New York; A. Kathleen Tomlinson, Individually and in Her Official Capacity as Magistrate Judge for the U.S. District Court for the Eastern District of New York; William D. Wall, Individually and in His Official Capacity as Magistrate Judge for the U.S. District Court for the Eastern District of New York; James L. Cott, Individually and in His Official Capacity as Magistrate Judge for the U.S. District Court for the Southern District of New York; Paul E. Davison, Individually and in His Official Capacity as Magistrate Judge for the U.S. District Court for the Southern District of New York; Michael H. Dolinger, Individually and in His Official Capacity as Magistrate Judge for the U.S. District Court for the Southern District of New York; Ronald L. Ellis, Individually and in His Official Capacity as Magistrate Judge for the U.S. District Court for the Southern District of New York; Kevin N. Fox, Individually and in His Official Capacity as Chief Magistrate Judge for the U.S. District Court for the Southern District of New York; James C. Francis, Individually and in His Official Capacity as Magistrate Judge for the U.S. District Court for the Southern District of New York; Debra Freeman,

Individually and in Her Official Capacity as Magistrate
Judge for the U.S. District Court for the Southern District
of New York; Gabriel W. Gorenstein, Individually and in
His Official Capacity as Magistrate Judge for the U.S.
District Court for the Southern District of New York;
Frank Maas, Individually and in His Official Capacity as
Magistrate Judge for the U.S. District Court for the
Southern District of New York; Sarah Netburn,
Individually and in His Official Capacity as Magistrate
Judge for the U.S. District Court for the Southern District
of New York; Andrew J. Peck, Individually and in His
Official Capacity as Magistrate Judge for the U.S.
District Court for the Southern District of New York;
Henry Pitman, Individually and in His Official Capacity
as Magistrate Judge for the U.S. District Court for the
Southern District of New York; Lisa Margaret Smith,
Individually and in His Official Capacity as Magistrate
Judge for the U.S. District Court for the Southern District
of New York; Individually and George A. Yanthis,
Individually and in His Official Capacity as Magistrate
Judge for the U.S. District Court for the Southern District
of New York; Martin R. Goldberg, Individually and in
His Official Capacity as Magistrate Judge for the U.S.
District Court for the Southern District of New York;
Lawrence E. Kahn, Individually and in His Official
Capacity as Judge for the U.S. District Court for the
Northern District of New York; José Linares,
Individually and in His Official Capacity as Judge for the
District of New Jersey; Catherine O'Hagan Wolfe,
Individually and in Her Official Capacity as Clerk of
Court for the U.S. Court of Appeals for the Second
Circuit; Nancy B. Firestone, in Her Official Capacity as
Judge for the United States Court of Claims; Christine
O.C. Miller, in Her Official Capacity as Judge for the
United States Court of Claims; John P. Wiese, in His
Official Capacity as Judge for the United States Court of
Claims; the Honorable Patrick J. Leahy, Individually and
in His Official Capacity as Chairman, U.S. Senate
Judiciary Committee; the Honorable Charles Schumer,
Individually and in His Official Capacity as Member,
U.S. Senate Judiciary Committee; the Honorable Dick
Durbin, Individually and in His Official Capacity as
Member, U.S. Senate Judiciary Committee; the
Honorable Sheldon Whitehouse, Individually and in His

Official Capacity as Member, U.S. Senate Judiciary Committee; the Honorable Amy Klobuchar, Individually and in Her Official Capacity as Member, U.S. Senate Judiciary Committee; the Honorable Al Franken, Individually and in His Official Capacity as Member, U.S. Senate Judiciary Committee; the Honorable Christopher A. Coons, Individually and in His Official Capacity as Member, U.S. Senate Judiciary Committee; the Honorable Richard Blumenthal, Individually and in His Official Capacity as Member, U.S. Senate Judiciary Committee; the Honorable Mazie Hirono, Individually and in His Official Capacity as Member, U.S. Senate Judiciary Committee; the Honorable Chuck Grassley, Individually and in His Official Capacity as Member, U.S. Senate Judiciary Committee; the Honorable Orrin G. Hatch, Individually and in His Official Capacity as Member, U.S. Senate Judiciary Committee; the Honorable Jeff Sessions, Individually and in His Official Capacity as Member, U.S. Senate Judiciary Committee; the Honorable Lindsey Graham, Individually and in His Official Capacity as Member, U.S. Senate Judiciary Committee; the Honorable John Cornyn, Individually and in His Official Capacity as Member, U.S. Senate Judiciary Committee; the Honorable Michael S. Lee, Individually and in His Official Capacity as Member, U.S. Senate Judiciary Committee; the Honorable Ted Cruz, Individually and in His Official Capacity as Member, U.S. Senate Judiciary Committee; the Honorable Jeff Flake, Individually and in His Official Capacity as Member, U.S. Senate Judiciary Committee; the Honorable Bob Goodlatte, Individually and in His Official Capacity as Member, U.S. House Judiciary Committee; the Honorable Jim Sensenbrenner, Jr., Individually and in His Official Capacity as Member, U.S. House Judiciary Committee; the Honorable Howard Coble, Individually and in His Official Capacity as Member, U.S. House Judiciary Committee; the Honorable Lamar Smith, Individually and in His Official Capacity as Member, U.S. House Judiciary Committee; the Honorable Steve Chabot, Individually and in His Official Capacity as Member, U.S. House Judiciary Committee; the Honorable Spencer Bachus, Individually and in His Official Capacity as Member, U.S. House Judiciary Committee; the Honorable Darrell Issa,

- Page 9 of 177 -

Individually and in His Official Capacity as Member, U.S. House Judiciary Committee; the Honorable J. Randy Forbes, Individually and in His Official Capacity as Member, U.S. House Judiciary Committee; the Honorable Steve King, Individually and in His Official Capacity as Member, U.S. House Judiciary Committee; the Honorable Trent Franks, Individually and in His Official Capacity as Member, U.S. House Judiciary Committee; the Honorable Louie Gohmert, Individually and in His Official Capacity as Member, U.S. House Judiciary Committee; the Honorable Jim Jordan, Individually and in His Official Capacity as Member, U.S. House Judiciary Committee; the Honorable Ted Poe, Individually and in His Official Capacity as Member, U.S. House Judiciary Committee; the Honorable Hon. Jason Chaffetz, Individually and in His Official Capacity as Member, U.S. House Judiciary Committee; the Honorable Tom Marino, Individually and in His Official Capacity as Member, U.S. House Judiciary Committee; the Honorable Hon. Trey Gowdy, Individually and in His Official Capacity as Member, U.S. House Judiciary Committee; the Honorable Mark Amodei, Individually and in His Official Capacity as Member, U.S. House Judiciary Committee; the Honorable Raul Labrador, Individually and in His Official Capacity as Member, U.S. House Judiciary Committee; the Honorable Blake Farenthold, Individually and in His Official Capacity as Member, U.S. House Judiciary Committee; the Honorable George Holding, Individually and in His Official Capacity as Member, U.S. House Judiciary Committee; the Honorable Doug Collins, Individually and in His Official Capacity as Member, U.S. House Judiciary Committee; the Honorable Ron DeSantis, Individually and in His Official Capacity as Member, U.S. House Judiciary Committee; the Honorable John Conyers, Individually and in His Official Capacity as Member, U.S. House Judiciary Committee; the Honorable Jerrold Nadler, Individually and in His Official Capacity as Member, U.S. House Judiciary Committee; the Honorable Bobby Scott, Individually and in His Official Capacity as Member, U.S. House Judiciary Committee; the Honorable Mel Watt, Individually and in His Official Capacity as Member, U.S. House Judiciary Committee;

the Honorable Zoe Lofgren, Individually and in Her
Official Capacity as Member, U.S. House Judiciary
Committee; the Honorable Jackson Lee, Individually and
in Her Official Capacity as Member, U.S. House
Judiciary Committee; the Honorable Steve Cohen,
Individually and in His Official Capacity as Member,
U.S. House Judiciary Committee; the Honorable Hank
Johnson, Individually and in His Official Capacity as
Member, U.S. House Judiciary Committee; the
Honorable Pedro Pierluisi, Individually and in His
Official Capacity as Member, U.S. House Judiciary
Committee; the Honorable Judy Chu, Individually and in
His Official Capacity as Member, U.S. House Judiciary
Committee; the Honorable Ted Deutch, Individually and
in His Official Capacity as Member, U.S. House
Judiciary Committee; the Honorable Luis V. Gutierrez,
Individually and in His Official Capacity as Member,
U.S. House Judiciary Committee; the Honorable Karen
Bass, Individually and in His Official Capacity as
Member, U.S. House Judiciary Committee; the
Honorable Cedric Richmond, Individually and in His
Official Capacity as Member, U.S. House Judiciary
Committee; the Honorable Suzan DelBene, Individually
and in His Official Capacity as Member, U.S. House
Judiciary Committee; the Honorable Joe Garcia,
Individually and in His Official Capacity as Member,
U.S. House Judiciary Committee; the Honorable Hakeem
Jeffries, Individually and in His Official Capacity as
Member, U.S. House Judiciary Committee; the
Honorable Dianne Feinstein, Individually and in Her
Official Capacity as Chairperson, Senate Select
Committee on Intelligence; the Honorable John D.
Rockefeller IV, Individually and in His Official Capacity
as Member, Senate Select Committee on Intelligence; the
Honorable Ron Wyden, Individually and in His Official
Capacity as Member, Senate Select Committee on
Intelligence; the Honorable Barbara A. Mikulski,
Individually and in Her Official Capacity as Member,
Senate Select Committee on Intelligence; the Honorable
Mark Udall, Individually and in His Official Capacity as
Member, Senate Select Committee on Intelligence; the
Honorable Mark Warner, Individually and in His Official
Capacity as Member, Senate Select Committee on
Intelligence; the Honorable Martin Heinrich, Individually

and in His Official Capacity as Member, Senate Select Committee on Intelligence; the Honorable Angus King, Individually and in His Official Capacity as Member, Senate Select Committee on Intelligence; the Honorable Saxby Chambliss, Individually and in His Official Capacity as Vice Chairman, Senate Select Committee on Intelligence; the Honorable Richard Burr, Individually and in His Official Capacity as Member, Senate Select Committee on Intelligence; the Honorable James E. Risch, Individually and in His Official Capacity as Member, Senate Select Committee on Intelligence; the Honorable Daniel Coats, Individually and in His Official Capacity as Member, Senate Select Committee on Intelligence; the Honorable Marco Rubio, Individually and in His Official Capacity as Member, Senate Select Committee on Intelligence; the Honorable Susan Collins, Individually and in Her Official Capacity as Member, Senate Select Committee on Intelligence; the Honorable Tom Coburn, Individually and in His Official Capacity as Member, Senate Select Committee on Intelligence; the Honorable Mike Rogers, Individually and in His Official Capacity as Chairman, House Permanent Select Committee on Intelligence; the Honorable Mac Thornberry, Individually and in His Official Capacity as Member, House Permanent Select Committee on Intelligence; the Honorable Jeff Miller, Individually and in His Official Capacity as Member, House Permanent Select Committee on Intelligence; the Honorable Mike Conaway, Individually and in His Official Capacity as Member, House Permanent Select Committee on Intelligence; the Honorable Peter King, Individually and in His Official Capacity as Member, House Permanent Select Committee on Intelligence; the Honorable Frank LoBiondo, Individually and in His Official Capacity as Member, House Permanent Select Committee on Intelligence; the Honorable Devin Nunes, Individually and in His Official Capacity as Member, House Permanent Select Committee on Intelligence; the Honorable Lynn Westmoreland, Individually and in His Official Capacity as Member, House Permanent Select Committee on Intelligence; the Honorable Michele Bachmann, Individually and in His Official Capacity as Member, House Permanent Select Committee on Intelligence; the Honorable Thomas J Rooney,

Individually and in His Official Capacity as Member, House Permanent Select Committee on Intelligence; the Honorable Joe Heck, Individually and in His Official Capacity as Member, House Permanent Select Committee on Intelligence; the Honorable Mike Pompeo, Individually and in His Official Capacity as Member, House Permanent Select Committee on Intelligence; the Honorable C.A. Dutch Ruppersberger, Individually and in His Official Capacity as Member, House Permanent Select Committee on Intelligence; the Honorable Mike Thompson, Individually and in His Official Capacity as Member, House Permanent Select Committee on Intelligence; the Honorable Jan Schakowsky, Individually and in His Official Capacity as Member, House Permanent Select Committee on Intelligence; the Honorable Jim Langevin, Individually and in His Official Capacity as Member, House Permanent Select Committee on Intelligence; Hon. Adam Schiff, Individually and in His Official Capacity as Member, House Permanent Select Committee on Intelligence; Hon. Luis Gutierrez, Individually and in His Official Capacity as Member, House Permanent Select Committee on Intelligence; Hon. Ed Pastor, Individually and in His Official Capacity as Member, House Permanent Select Committee on Intelligence; Hon. Jim Himes, Individually and in His Official Capacity as Member, House Permanent Select Committee on Intelligence; Hon. Terri Sewell, Individually and in His Official Capacity as Member, House Permanent Select Committee on Intelligence; Mr. Ruslan Agarunov, Individually and in His Official Capacity as Campaign Contributor to Congressman Hakeem Jeffries; Bertram Berns, Individually and in His Official Capacity as Campaign Contributor to Congressman Hakeem Jeffries; Mr. Norman Bobrow, Individually and in His Official Capacity as Campaign Contributor to Congressman Hakeem Jeffries; Mr. Paul Burg, Individually and in His Official Capacity as Campaign Contributor to Congressman Hakeem Jeffries; Ms. Vickie Fishman, Individually and in His Official Capacity as Campaign Contributor to Congressman Hakeem Jeffries; Mr. Sander Gerber, Individually and in His Official Capacity as Campaign Contributor to Congressman Hakeem Jeffries; Mr. Michael Granoff, Individually and in His

Official Capacity as Campaign Contributor to Congressman Hakeem Jeffries; Mr. Marvin Israelow, Individually and in His Official Capacity as Campaign Contributor to Congressman Hakeem Jeffries; Mr. Alan Levow, Individually and in His Official Capacity as Campaign Contributor to Congressman Hakeem Jeffries; Mr. William Russell-Shapiro, Individually and in His Official Capacity as Campaign Contributor to Congressman Hakeem Jeffries; Ms. Donna Sternberg, Individually and in His Official Capacity as Campaign Contributor to Congressman Hakeem Jeffries; Mr. Marc Spiegel, Individually and in His Official Capacity as Campaign Contributor to Congressman Hakeem Jeffries; Mr. Daniel Tenenblatt, Individually and in His Official Capacity as Campaign Contributor to Congressman Hakeem Jeffries; Leslie Topper, Individually and in His Official Capacity as Campaign Contributor to Congressman Hakeem Jeffries; Mr. Craig Weiss, Individually and in His Official Capacity as Campaign Contributor to Congressman Hakeem Jeffries; World Alliance for Israel PAC, Individually and in Its Official Capacity as Campaign-Contributor to Congressman Hakeem Jeffries; Lee Ziff, Individually and in His Official Capacity as President of the World Alliance for Israel; the Honorable Eric H. Holder, Individually and in His Official Capacity as Attorney General for the United States; Thomas Perez, Individually and in His Official Capacity as Assistant Attorney General, Disability Right Section for the U.S. Department of Justice; Michael E. Horowitz, Individual and His in Official Capacity as Inspector General for the U.S. Department of Justice; the U.S. Department of Justice; the Honorable Robert Swan Mueller, Individually and in His Official Capacity as Director of the Federal Bureau of Investigation; George Venizelos, Individually and in His Official Capacity as Assistant Director in Charge of the Federal Bureau of Investigation, New York Branch; the Federal Bureau of Investigation; Mr. Stein, Individually and in His Official Capacity as Employee of the Federal Bureau of Investigation; "John Doe" #1, Individually and in His Official Capacity as Employee of the Federal Bureau of Investigation; the Honorable Janet Napolitano, Individually and in Her Official Capacity as Secretary for the U.S. Department of Homeland Security; John

Morton, Individually and in His Official Capacity as Director for the U.S. Immigration and Customs Enforcement; Daniel Ragsdale, Individually and in His Official Capacity as Deputy Director for the U.S. Immigration and Customs Enforcement; Radha Sekar, Individually and in Her Official Capacity as Acting Executive Associate Director for the U.S. Immigration and Customs Enforcement; James Dinkins, Individually and in His Official Capacity as Executive Associate Director for the U.S. Homeland Security Investigations, U.S. Immigration and Customs Enforcement; Gary Mead, Individually and in His Official Capacity as Executive Associate Director for the Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; Peter S. Vincent, Individually and in His Official Capacity as Principal Legal Adviser for the U.S. Immigration and Customs Enforcement;Timothy Moynihan, Individually and in His Official Capacity as Assistant Director, Office of Professional Responsibility U.S. Immigration and Customs Enforcement; Tamara Kessler, Individually and in Her Official Capacity as Acting Officer for the Office for Civil Rights and Civil Liberties; Rachel McCarthy, Individually and Her Official Capacity as Bar Counsel for the U.S. Department of Homeland Security; Rand Beers, Individually and in His Official Capacity as Under Secretary for the Homeland Security for National Protection and Programs; Denis P. McGowan, Individually and in His Official Capacity as Regional Director, Federal Protection Service, National Protection and Programs Directorate for the U.S. Department of Homeland Security; Gayle Worthy, Individually and in Her Official Capacity as FOIA Officer/Public Liaison for the U.S. Department of Homeland Security; Ivan K. Fong, Individually and in His Official Capacity as General Counsel of the U.S. Department of Homeland Security; Charles K. Edwards, Individually and in His Official Capacity as Inspector General of U.S. Department of Homeland Security; the U.S. Department of Homeland Security; Stacia Hylton, Individually and in Her Official Capacity as Director of the U.S. Marshal Service; Gerald Auerbach, Individually and in His Official Capacity as General Counsel for the U.S. Marshals Service; Charles Dunne, Director, U.S.

**- Page 15 of 177 -**

Marshals Service for the Eastern District of New York; "John Doe #2", U.S. Marshals Service for the Eastern District of New York; "John Doe #3, U.S. Marshals Service for the Eastern District of New York; "Jane Doe", U.S. Marshals Service for the Eastern District of New York; the U.S. Marshals Service; Kathleen Sebelius, Individually and in Her Official Capacity as Secretary of the U.S. Department of Health and Human Services; William B. Schultz, Individually in His Official Capacity as General Counsel for the U.S. Department of Health and Human Services; the U.S. Department of Health and Human Services; Marilyn Tavenner, Individually and in Her Official Capacity as Acting Administrator Chief Operating Officer, Centers for Medicare and Medicaid Office; Eric Schneiderman, Individually and in His Official Capacity as New York State Attorney General, New York State Attorney General's Office; Eric Adams, Individually, and in His Official Capacity as Member, New York Senate Judiciary Committee; John J. Bonacic, Individually, and in His Official Capacity as Member, New York Senate Judiciary Committee; Neil D. Breslin, Individually, and in His Official Capacity as Member, New York Senate Judiciary Committee; John A. DeFrancisco, Individually, and in His Official Capacity as Member, New York Senate Judiciary Committee; Martin Malavé Dilan, Individually, and in His Official Capacity as Member, New York Senate Judiciary Committee; Adriano Espaillat, Individually, and in His Official Capacity as Member, New York Senate Judiciary Committee; John J. Flanagan, Individually, and in His Official Capacity as Member, New York Senate Judiciary Committee; Charles J. Fuschillo Jr., Individually, and in His Official Capacity as Member, New York Senate Judiciary Committee; Kemp Hannon, Individually, and in His Official Capacity as Member, New York Senate Judiciary Committee; Ruth Hassell-Thompson, Individually, and in Her Official Capacity as Member, New York Senate Judiciary Committee; Brad Hoylman, Individually, and in His Official Capacity as Member, New York Senate Judiciary Committee; Andrew J Lanza, Individually, and in His Official Capacity as Member, New York Senate Judiciary Committee; Kenneth P. LaValle, Individually, and in His Official Capacity as Member, New York Senate Judiciary Committee; Betty

Little, Individually, and in Her Official Capacity as Member, New York Senate Judiciary Committee; Michael F. Nozzolio, Individually, and in His Official Capacity as Member, New York Senate Judiciary Committee; Thomas F. O'Mara, Individually, and in His Official Capacity as Member, New York Senate Judiciary Committee; Bill Perkins, Individually, and in His Official Capacity as Member, New York Senate Judiciary Committee; Michael H. Ranzenhofer, Individually, and in His Official Capacity as Member, New York Senate Judiciary Committee; John L. Sampson, Individually, and in His Official Capacity as Member, New York Senate Judiciary Committee; Diane J. Savino, Individually, and in His Official Capacity as Member, New York Senate Judiciary Committee; Malcolm A. Smith, Individually, and in His Official Capacity as Member, New York Senate Judiciary Committee; Toby Ann Stavisky, Individually, and in His Official Capacity as Member, New York Senate Judiciary Committee; Lee M. Zeldin, Individually, and in His Official Capacity as Member, New York Senate Judiciary Committee; Andrew M. Cuomo, Individually and in His Official Capacity as Governor of the State of New York; the State of New York; Jonathan Lippman, Individually and in His Official Capacity as Chief Judge for the New York State Unified Court System; John W. McConnell, Individually and in His Official Capacity as Counsel to the Chief Administrative Judge, for the New York State Unified Court System; Daniel D. Angiolillo, Individually and in His Official Capacity as Appellate Judge for the New York State Unified Court System; Second Judicial Department; Cheryl E. Chambers, Individually and in Her Official Capacity as Appellate Judge for the New York State Unified Court System; Second Judicial Department; Jeffrey A. Cohen, Individually and in His Official Capacity as Appellate Judge for the New York State Unified Court System; Second Judicial Department; Mark C. Dillon, Individually and in His Official Capacity as Appellate Judge for the New York State Unified Court System; Second Judicial Department; Anita R. Florio, Individually and in Her Official Capacity as Appellate Judge for the New York State Unified Court System; Second Judicial Department; Steven W. Fisher, Individually and in His

Official Capacity as Appellate Judge for the New York State Unified Court System; Second Judicial Department; L. Priscilla Hall, Individually and in Her Official Capacity as Appellate Judge for the New York State Unified Court System; Second Judicial Department; John M. Leventhal, Individually and in His Official Capacity as Appellate Judge for the New York State Unified Court System; Second Judicial Department; Plummer E. Lott, Individually and in His Official Capacity as Appellate Judge for the New York State Unified Court System; Second Judicial Department; William F. Mastro, Individually and in His Official Capacity as Appellate Judge for the New York State Unified Court System; Second Judicial Department; Robert J. Miller, Individually and in His Official Capacity as Appellate Judge for the New York State Unified Court System; Second Judicial Department; A. Gail Prudenti, Individually and in Her Official Capacity as Appellate Judge for the New York State Unified Court System; Second Judicial Department; Reinaldo E. Rivera, Individually and in His Official Capacity as Appellate Judge for the New York State Unified Court System; Second Judicial Department; Sheri S. Roman, Individually and in Her Official Capacity as Appellate Judge for the New York State Unified Court System; Second Judicial Department; Sandra L. Sgroi, Individually and in Her Official Capacity as Appellate Judge for the New York State Unified Court System; Second Judicial Department; Peter B. Skelos, Individually and in His Official Capacity as Appellate Judge for the New York State Unified Court System; Second Judicial Department; Thomas Scuccimarra, Individually and in His Official Capacity as Justice for the New York State Unified Court System; Jeffrey S. Sunshine, Individually and in His Capacity as Justice, New York State Unified Court System; Nancy Tegtmeier Sunshine, Individually and in her Official Capacity as Chief Clerk of Court for the New York State Unified Court System; Lara J. Genovesi, Individually and in Her Official Capacity as Court Attorney for the New York State Unified Court System; Antonio Diaz, Individually and in His Official Capacity as Borough Chief Clerk for the New York State Unified Court System; Arthur M. Schack, Individually

and in His Official Capacity as Justice of the New York State Unified Court System; Ronald D. Bratt, Individually and in His Official Capacity as Law Clerk for the New York State Unified Court System; Barbara Guida, Individually and in Her Official Capacity as Secretary for the New York State Court System; Yolanda Jennings, Individually and in Her Official Capacity as Part Clerk for the New York State Unified Court System; Kalisha Evans, Individually and in Her Official Capacity as Officer for the New York State Unified Court System; Eileen A. Rakower, Individually and in Her Official Capacity as Justice for the New York State Unified Court System; Donna Mills, Individually and in Her Official Capacity as Justice for the New York State Unified Court System; Matthew D'Emic, Individually and in His Official Capacity as Justice for the New York State Unified Court System; Michael Gerstein, Individually and in His Official Capacity as Justice for the New York State Unified Court System; New York State Unified Court System; Anthony Cutrona, Individually and in His Official Capacity as Justice for the New York State Unified Court System; New York State Unified Court System; Thomas A. Klonick, Individually and in His Official Capacity as Chair of the New York State Commission on Judicial Conduct; the New York State Commission on Judicial Conduct; Jorge Del Tipico, Individually and in His Capacity as Chair for the New York State Departmental Disciplinary Committee for the First Department; New York State Departmental Disciplinary Committee for the First Department; Richard M. Gutierrez, Individually and in His Official Capacity as Chair for the Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts; Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts; The Honorable Nirav R. Shah, M.D., M.P.H., Individually and in His Official Capacity as Commissioner of the New York State Department of Health; New York State Department of Health; Kristin M. Woodlock, RN, MPA, Individually and in Her Official Capacity as Acting Commissioner for the New York State Office of Mental Health; John Tauriello, Esq. Individually and in His Official Capacity as Deputy Commissioner and Chief Counsel of the New York State Office of Mental Health; Samuel Gant,

Individually and in His Official Capacity as Director of the Intensive Case Management Program, Kingsboro Psychiatric Facility, New York State Office of Mental Health, Bridget Davis, Individually and in Her Official Capacity as Intensive Case Worker for the Intensive Case Management Program, New York State Office of Mental Health; New York State Office of Mental Health; Kristin M. Proud, Individually and in Her Official Capacity as Commissioner of the New York State Office of Temporary and Disability Assistance; Maria T. Vidal, Individually and in Her Official Capacity as General Counsel for the New York State Office of Temporary and Disability Assistance; Robert Doar, Individually and in His Official Capacity as Administrator and Commissioner of the New York City Human Resources Administration; Roy A. Esnard, Individually and in His/Her Official Capacity as General Counsel of the New York City Human Resources Administration; the New York City Human Resources Administration; the New York City Human Resources Administration; Michael Bloomberg, Individually and in His Official Capacity as Mayor of the City of New York; the City of New York; Michael Cardozo, Individually and in His Official Capacity as Corporation Counsel for the City of New York; Charles A. Hynes, Individually and in his Official Capacity as District Attorney for Kings County; Amy Feinstein, Individually and in Her Official Capacity as Chief Assistant District Attorney, Kings County District Attorney's Office; Kings County District Attorney's Office; Salvatore J. Russo, Individually and in His Official Capacity as General Counsel for the New York City Health and Hospitals Corporation; Agnes Flores, Individually and in Her Former Official Capacity as Psychiatric Nurse for the New York City Health and Hospitals Corporation; Martin Bolton, Individually and in Former His Official Capacity as Psychotherapist for the New York City Health and Hospitals Corporation; Margaret Thomas, Individually and in Her Office Capacity as Licensed Practical Nurse for the New York City Health and Hospitals Corporation; Pauline Amo-Adu, Individually and in Her Official Capacity as (unlicensed) Master Social Worker for the New York City Health and Hospitals Corporation; Mario Blake, Individually and in His Official Capacity as Psychiatric

Technician; James Oniwe, Individually and in His Official Capacity as Registered Nurse for the New York City Health and Hospitals Corporation; Jean Barry, Individually and in Her Official Capacity as Licensed Clinical Social Worker for the New York City Health and Hospitals Corporation; Hugette Guilliame Sam, Individually and in Her Official Capacity as Registered Nurse for the New York City Health and Hospitals Corporation; Samuel Sarpong, Individually and in His Official Capacity as Program Manager for the New York City Health and Hospitals Corporation; Dr. Scott Andrew Berger, Individually and in His Official Capacity as Psychiatrist for the New York City Health and Hospitals Corporation; New York City Health and Hospitals Corporation; Joseph Visceglia, Individually and in His Official Capacity as City Clerk for the Office of the City Clerk; Office of the City Clerk, Marriage License Bureau; City of New York; Dr. "John Doe" #4, Psychiatrist, Brookdale Hospital Medical Center; Brooklyn Hospital Medical Center; Giselle Stolper, President and CEO, Mental Health Association of New York City; Robert P. Borsody, Esq., Secretary of the Mental Health Association of New York City; Mental Health Association of New York City; Sean Bolser, Esq., Federal Defender, Federal District of New York; Heidi C. Cesare, Esq, Federal Defenders, Federal District of New York; Randi L. Chavis, Esq, Federal Defenders, Federal District of New York; Deirdre von Dornum, Esq, Federal Defenders, Federal District of New York; Tracey E. Gaffey, Esq, Federal Defenders, Federal District of New York; Michelle A. Gelernt, Esq., Federal Defenders, Federal District of New  York; Lisa Hoyes, Federal Defenders, Federal District of New York; Len H. Kamdang, Federal Defenders, Federal District of New York; Peter Kirchheimer, Federal Defenders, Federal District of New York; David A. Lewis, Federal Defenders, Federal District of New York; Douglas G. Morris, Federal Defenders, Federal District of New York; Michael P. Padden, Federal Defenders, Federal District of New York; David Patton, Federal Defenders, Federal District of New York; Jan A. Rostal, Federal Defenders, Federal District of New York; Michael K. Schneider, Federal Defenders, Federal District of New York; Chase A. Scolnick, Federal Defenders, Federal District of New

York; Kannan Sundaram, Federal Defenders, Federal
District of New York; Michael D. Weil, Federal
Defenders, Federal District of New York; Mildred M.
Whalen, Federal Defenders, Federal District of New
York; Robert M. Baum, Federal Defenders, Federal
District of New York; Sarah Baumgartel, Federal
Defenders, Federal District of New York; Susanne Brody,
Federal Defenders, Federal District of New York;
Jennifer Brown, Federal Defenders, Federal District of
New York; Martin Cohen, Federal Defenders, Federal
District of New York; Peggy Cross-Goldenberg, Federal
Defenders, Federal District of New York; Christopher
Flood, Federal Defenders, Federal District of New York;
Julia Gatto, Federal Defenders, Federal District of New
York; Mark Gombiner, Federal Defenders, Federal
District of New York; Jonathan Marvinny, Federal
Defenders, Federal District of New York; Annalisa
Mirón, Federal Defenders, Federal District of New York;
David Patton, Federal Defenders, Federal District of
New York; Sabrina Shroff, Federal Defenders, Federal
District of New York; Roland Thau, Federal Defenders,
Federal District of New York; Jerrod Thompson-Hicks,
Federal Defenders, Federal District of New York; Philip
Weinstein, Federal Defenders, Federal District of New
York; Federal Defenders, Federal District of New York;
Leonardo Aldridge, Esq., Brooklyn Defender Service;
Mary Beth Anderson, Esq., Brooklyn Defender Service;
Michael Arthus, Esq., Brooklyn Defender Service; Adam
Axel, Esq., Brooklyn Defender Service; Betty Baez
Melo, Esq., Brooklyn Defender Service; Elyse Bataller
Schneider, Esq., Brooklyn Defender Service; Michael F.
Baum, Esq., Brooklyn Defender Service; Whitney Z.
Bernstein, Esq., Brooklyn Defender Service; Sarah
Boyette, Esq., Brooklyn Defender Service; Michael
Brown, Esq., Brooklyn Defender Service; Joyce
Brunwasser, Esq., Brooklyn Defender Service; Jamie
Burke, Esq., Brooklyn Defender Service; Sarah M.
Burleson, Esq., Brooklyn Defender Service; Amos
Cohen, Esq., Brooklyn Defender Service; George Cooke,
Esq., Brooklyn Defender Service; Virginia Curry, Esq.,
Brooklyn Defender Service; Edward Daniels, Esq.,
Brooklyn Defender Service; Chad Dauman, Esq.,
Stephen Dean, Esq., Brooklyn Defender Service;
Christina M. Dieckmann, Esq., Brooklyn Defender

Service; Sara Feinberg, Esq., Juan Fiol, Esq., Brooklyn Defender Service; Molly Gallivan, Esq., Brooklyn Defender Service; Tim Gumkowski, Esq., Brooklyn Defender Service; Amanda Hamann, Esq., Brooklyn Defender Service; Le'Shera Hardy, Esq., Brooklyn Defender Service; Scott Hechinger, Esq., Brooklyn Defender Service; Shannon Heery, Esq., Brooklyn Defender Service; Nyasa Hickey, Esq., Brooklyn Defender Service; Linda Hoff, Esq., Brooklyn Defender Service; Dorothy Hughes, Esq., Joseph Indusi, Esq., Brooklyn Defender Service; Amanda Jack, Esq., Brooklyn Defender Service; Joyce Kendrick, Esq., Elizabeth Kilstein, Esq., Brooklyn Defender Service; Ashley Kloepfer, Esq., Brooklyn Defender Service; Jared Kneitel, Esq., Brooklyn Defender Service; Dara Kristt, Esq., Brooklyn Defender Service; Summer Lacey, Esq., Brooklyn Defender Service; Richard M. LaFontaine, Esq., Brooklyn Defender Service; Elizabeth Latimer, Esq., Yung-Mi Lee, Esq., Brooklyn Defender Service; Thomas Leith, Esq., Brooklyn Defender Service; Hela Levi, Esq., Brooklyn Defender Service; Paul Lieberman, Esq., Brooklyn Defender Service; Jacob Lipsky, Esq., Brooklyn Defender Service; Cary London, Esq., Brooklyn Defender Service; Ruben Loyo, Esq., Brooklyn Defender Service; Alyssa Mack, Esq., Brooklyn Defender Service; Harvey Mandelcorn, Esq., Brooklyn Defender Service; Marie Mark, Esq., Brooklyn Defender Service; Ed Mayr, Esq., Brooklyn Defender Service; Cameron Mease, Esq., Brooklyn Defender Service; Becca Miller, Esq., Brooklyn Defender Service; Susan Mitchell, Esq., Brooklyn Defender Service; Jillian Modzeleski, Esq., Brooklyn Defender Service; Benjamin Moore, Esq., Brooklyn Defender Service; Lauren Nakamura, Esq., Brooklyn Defender Service; Anders Nelson, Esq., Sarah Nolan, Esq., Brooklyn Defender Service; Hemangi S. Pai, Esq., Brooklyn Defender Service; Sydney Peck, Esq., Brooklyn Defender Service; Talia Peleg, Esq., Brooklyn Defender Service; Christopher Perks, Esq., Alex Perlin, Esq., Brooklyn Defender Service; Guy Raimondi, Esq., Brooklyn Defender Service; Danielle Regis, Esq., Brooklyn Defender Service; Robert Riether, Esq., Brooklyn Defender Service; Alan Rosenberg, Esq., Brooklyn Defender Service; Scott Ruplinger, Esq., Brooklyn

Defender Service; Laura Saft, Esq., Brooklyn Defender Service; Lisa Salvatore, Esq., Iliana Santiago, Esq., Josh Saunders, Esq., Brooklyn Defender Service; Lisa Schreibersdorf, Esq., Brooklyn Defender Service; Amanda Scioscia, Esq., Brooklyn Defender Service; David Secular, Esq., Brooklyn Defender Service; Renee Seman, Esq., Brooklyn Defender Service; Marissa Sherman, Esq., Brooklyn Defender Service; Joseph P. Sieger, Esq., Brooklyn Defender Service; Debora Silberman, Esq., Brooklyn Defender Service; Arielle Simon, Esq., Brooklyn Defender Service; Angad Singh, Esq., Brooklyn Defender Service; Shari Stein, Esq., Brooklyn Defender Service; Sonia Tate-Cousins, Esq., Brooklyn Defender Service; Sarah Vendzules, Esq., Brooklyn Defender Service; C. Randall Walker, Esq., Brooklyn Defender Service; Emilie Williams, Esq., Brooklyn Defender Service; Ken Womble, Esq., Brooklyn Defender Service; Aminie Woolworth, Esq., Brooklyn Defender Service; Brooklyn Defender Service; Marianne C. Yang, Esq., Brooklyn Defender Service; Brooklyn Defender Service; Iris Ying, Esq., Brooklyn Defender Service; Benjamin Zeman, Esq., Brooklyn Defender Service; Lauren Zimmerman, Brooklyn Defender Service, Brooklyn Defenders Service, Inc.; Mortimer Zuckerman, Individually and in His Official Capacity as Editor, Publisher and Owner of the Daily News, LP; Mortimer Zuckerman, Individually and in His Official Capacity as Editor, Publisher and Owner of the Daily News, LP; Scott Shifrel, former Staff Writer of the Daily News, LP; the Daily News, LP; Rupert Murdoch, New York Post, New York Post; Mark Fass, Staff Writer, ALM.com; ALM.com; Jazmin M. Quary, Michael J. Fitzpatrick, Individually and in His Official Capacity as Executive Director for NAMI, Inc.; NAMI, Inc.; Andrew Lavoott Bluestone, Esq., Roberta Siegal, Individually in Her Official Capacity as Assistant Vice President of Federation Employment and Guidance Services, Inc.; Dr. Forster, in His Official Capacity as Psychiatrist of Federation Employment and Guidance Services, Inc.; Clifford Nafus, in His Official Capacity as Rehabilitation Technician of Federation Employment and Guidance Services, Inc.; Federation Employment and Guidance Services, Inc.; Rabbi Michael J. Broyde, Esq., Rabbi Michoel Zylberman, Esq., Rabbi Yona Reiss, Esq.,

Rabbi Shlomo Weissmann, Esq.; Abraham H. Foxman, Individually and in His Capacity as Executive Director of the Anti-Defamation League, Inc.; Steven M. Freeman, Esq., Anti Defamation League, Inc.; Steven C. Sheinberg, Esq., Anti-Defamation League, Inc.; Deborah Bensinger, Esq., Anti-Defamation League, Inc.; David L. Barkey, Esq., Anti-Defamation League, Inc.; Allen E. Kaye, P.C.; Jan Eastman, Esq., Chair, Vermont Professional Responsibility Program, Office of Bar Counsel; Michael Kennedy, Individually and in His Official Capacity as Bar Counsel for the Vermont Professional Responsibility Program, Office of Bar Counsel; Vermont Professional Responsibility Program, Office of Bar Counsel; George Wachtel, Esq.; Jonathan D. Schwartz, Individually and in His Official Capacity as Executive Vice President and General Counsel for Cablevision, Inc.; Cablevision, Inc.; Ruslan Agarunov, Campaign Contributor, Bertram Berns, Campaign, Norman Bobrow, Campaign Contributor, Paul Burg, Campaign Contributor; Vickie Fishman, Campaign Contributor; Sander Gerber; Sander Gerber; Michael Granoff; Campaign Contributor; Sander Gerber, Michael Granoff, Marvin Israelow, Alan Levow, Mr. William Russell-Shapiro, Marc Spiegel, Donna Sternberg, Mr. Daniel Tenenblatt, Leslie Topper, Craig Weiss, Alan Wildes, World Alliance for Israel PAC, Lee Ziff, Allen E. Kaye, Esq. Harvey Shapiro, Esq., Law Office of Harvey Shapiro; Jack Gladstein, Esq., Law Office of Jack Gladstein and Messinger, Osato Eugene Uzamere, Esq., Uzamere and Associates, PLLC and Senator Ehigie Edobor Uzamere

_____ Defendants. _____

At all times hereinafter mentioned, Plaintiff Cheryl D. Uzamere, a natural person, and mother of David P. Walker and Tara A. Uzamere, all of whom are victims of fraud, identity theft, aggravated identity theft, other federal offenses and civil rights violations committed by the Defendants, states the following under the penalties of perjury:

## PRELIMINARY STATEMENT

### U.S. Constitutional Mandates

### First Amendment

1)      "Congress shall make no law respecting an establishment of religion. . .or abridging the freedom of speech, . . .and to petition the Government for a redress of grievances " See *Lemon v. Kurtzman*, 403 U.S. 602 (1971)

2)      <u>U.S. Supreme Court Case Law Regarding the Establishment Clause</u>: "In 1947, the U.S. Supreme Court decision *Everson v. Board of Education* incorporated the Establishment Clause (i.e., made it apply against the states). In the majority decision, JusticeHugo Black wrote: 'The "establishment of religion"' clause of the First Amendment means at least this: Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion to another . . . in the words of Jefferson, the [First Amendment] clause against establishment of religion by law was intended to erect 'a wall of separation between church and State' ... That wall must be kept high and impregnable. We could not approve the slightest breach. In the Board of Education of *Kiryas Joel Village School District v. Grumet* (1994), Justice David Souter, writing for the majority, concluded that "government should not prefer one religion to another, or religion to irreligion,"

3)      <u>U.S. Supreme Court Case Law Regarding the Free Speech Clause</u>: In *Herndon v. Lowry* (1937), the Court heard the case of African American Communist Party organizer Angelo Herndon, who had been convicted under the Slave Insurrection Statute for advocating black rule in the southern US. In a 5-4 decision, the Court reversed Herndon's conviction, upholding Holmes' "clear and present danger" test for the first time and arguing that the state of Georgia

had not demonstrated that Herndon's actions met this standard (NSLs should be held to this standard).

4) <u>U.S. Supreme Court Case Law Regarding the Petition Clause</u>: "Today this right encompasses petitions to all three branches of the federal government—the Congress, the executive and the judiciary—and has been extended to the states through incorporation. According to the Supreme Court, 'redress of grievances' is to be construed broadly: it includes not solely appeals by the public to the government for the redressing of a grievance in the traditional sense, but also, petitions on behalf of private interests seeking personal gain. The right not only protects demands for "a redress of grievances" but also demands for government action. In *Borough of Duryea v. Guarnieri* (2011), the Supreme Court stated regarding the Free Speech Clause and the Petition Clause: It is not necessary to say that the two Clauses are identical in their mandate or their purpose and effect to acknowledge that the rights of speech and petition share substantial common ground... Both speech and petition are integral to the democratic process, although not necessarily in the same way. The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives, whereas the right to speak fosters the public exchange of ideas that is integral to deliberative democracy as well as to the whole realm of ideas and human affairs. Beyond the political sphere, both speech and petition advance personal expression, although the right to petition is generally concerned with expression directed to the government seeking redress of a grievance. The right of assembly was originally distinguished from the right to petition. In *United States v. Cruikshank* the Supreme Court held that 'the right of the people peaceably to assemble for the purpose of petitioning Congress for a redress of grievances, or for anything else connected with

the powers or duties of the National Government, is an attribute of national citizenship, and, as such, under protection of, and guaranteed by, the United States. The very idea of a government, republican in form, implies a right on the part of its citizens to meet peaceably for consultation in respect to public affairs and to petition for a redress of grievances.' Justice Morrison Waite's opinion for the Court carefully distinguished the right to peaceably assemble as a secondary right, while the right to petition was labeled to be a primary right.[1]

### Fifth Amendment

5)      "No person shall be . . .deprived of life, liberty, or property, without due process of law. . ." *Correctional Services Corporation, v. John E. Malesko* 534 U. S. __ (2001), page 5.

### Sixth Amendment

6)      "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense." See *Pointer v. Texas*, 380 U.S. 400 (1965)

7)      U.S. Supreme Court Case Law regarding the Notice Clause:  "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses

---

1    Wikipedia.org,  http://en.wikipedia.org/wiki/First_Amendment_to_the_Constitution_of_the_United_States, credit for subparagraphs 1(a), (b), and (c).

in his favor, and to have the Assistance of Counsel for his defence." In the case *United States v. Carll*, 105 U.S. 611 (1881)"

8)    U.S. Supreme Court Case Law regarding the Assistance of Counsel Clause: "The Sixth Amendment is a part of what is called our Bill of Rights. In *Gideon v. Wainwright, supra,* in which this Court held that the Sixth Amendment's right to the assistance of counsel is obligatory upon the States, we did so on the ground that 'a provision of the Bill of Rights which is 'fundamental and essential to a fair trial' is made obligatory upon the States by the Fourteenth Amendment.' 372 U. S. at 342. And last Term in *Malloy v. Hogan*, 378 U. S. 1, in holding that the Fifth Amendment's guarantee against self-incrimination was made applicable to the States by the Fourteenth, we reiterated the holding of *Gideon* that the Sixth Amendment's right-to-counsel guarantee is 'a fundamental right, essential to a fair trial,' and thus was made obligatory on the States by the Fourteenth Amendment.' 378 U. .S., at 6. See also *Murphy v. Waterfront Commission*, 378 U. S. 52. We hold today that the Sixth Amendment's right of an accused to confront the witnesses against him is likewise a fundamental right and is made obligatory on the States by the Fourteenth Amendment."

### Fourteenth Amendment

9)    "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property , without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." See *Tennessee V. Lane* (02-1667) 541 U.S. 509 (2004) 315 F.3d 680, affirmed.

## FEDERAL STATUTES

### Title II of the Americans With Disabilities
### Federal Rehabilitation Act of 1973

10)   Title II of the Americans With Disabilities Act, 42 U.S.C. §§12131, 12132, prohibits discrimination against individuals with disabilities, including those with mental illness. Similarly, Section 504 of the Rehabilitation Act, 29 U.S.C. §794, provides that no person with a disability, including those with mental illness, shall: "solely by reason of his or her disability, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

11)   In the decision regarding *Disability Advocates, Inc. vs. Paterson, et al*, Defendant Garaufis stated that "The Supreme Court held in *Olmstead v. L.C.*, 527 U.S. 581 (1999), that "[u]njustified isolation . . . is properly regarded as discrimination based on disability," observing that "institutional placement of persons who can handle and benefit from community settings perpetuates unwarranted assumptions that persons so isolated are incapable of or unworthy of participating in community life." 527 U.S. at 597, 600. The "integration mandate" of Title II of the American with Disabilities Act, 42 U.S.C. §12101 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. §791 et seq., as expressed in federal regulations and Olmstead, requires that when a state provides services to individuals with disabilities, it must do so "in the most integrated setting appropriate to their needs." The "most integrated setting," according to the federal regulations, is "a setting that enables individuals with disabilities to interact with non-disabled persons to the fullest extent possible." 28 C.F.R. §35.130(d); 28 C.F.R. pt. 35 app. A.

12) Further, Title II of the Americans With Disabilities Act requires that "a public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." See 28 C.F.R. §35.130(d).

13) In the landmark decision *Olmstead v. L.C.*, 527 U.S. 581 (1999), the U.S. Supreme Court held that these provisions of law are violated when a state places people with mental illness in "unjustified isolation," and that a person with mental illness may sue the state for failing to place him or her "in the most integrated setting appropriate to [his or her] needs."

14) Defendant Garaufis stated in the aforementioned decision that Title II of the ADA applies to "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. §12131(1). Accordingly, all governmental entities are subject to Title II of the Americans With Disabilities Act.

**Civil Rights Act of 1964, Title VI, §601**
**Nondiscrimination in Federally Assisted Programs**

15) "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *Fogg v. Gonzales*, Nos. 05-5439, 05-5440 says the following: "In the case *Correctional Services Corporation, v. John E. Malesko*, the U.S. Supreme Court stated that "In 30 years of Bivens jurisprudence we have extended its holding only twice, to provide an otherwise nonexistent cause of action against individual officers alleged to have acted unconstitutionally, or to provide a cause of action for a plaintiff who lacked any alternative remedy for harms caused by an individual officers unconstitutional conduct." However, in the same case, the Court said: "Most

recently, in *FDIC v. Meyer*, we unanimously declined an invitation to extend *Bivens* to permit suit against a federal agency, even though . . . .Congress had waived sovereign immunity [and] was otherwise amenable to suit. 510 U. S., at 484, 486. Our opinion emphasized that the purpose of *Bivens* is to deter the officer, not the agency. Id., at 485 (emphasis in original) (citing *Carlson v. Green*, supra, at 21). We reasoned that if given the choice, plaintiffs would sue a federal agency instead of an individual who could assert qualified immunity as an affirmative defense. To the extent aggrieved parties had less incentive to bring a damages claim against individuals, the deterrent effects of the *Bivens* remedy would be lost. 510 U.S. at 485. Accordingly, to allow a *Bivens* claim against federal agencies would mean the evisceration of the *Bivens* remedy, rather than its extension. 510 U. S., at 485."

**42 USC §1983 – Civil Action for Deprivation of Rights**
**42 USC §1985 - Conspiracy to Interfere with Civil Rights**

16)     "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. . .If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended

or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws. . .the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators." See *Haddle V. Garrison et al*, 525 U.S. 121 (1998).

17) Federal courts recognize blacklisting as a cause of action. In the lawsuit *Castillo v. Spiliada Maritime Corporation MV*, 937 F. 2d 240, the United State Court of Appeals for the Fifth Circuit stated that ". . .Plaintiffs have offered substantial evidence that they were coerced into agreeing to the settlements with threats that charges would be filed against them with the POEA and that they would be blacklisted. As the threats of blacklisting endangered the possibility of future employment in their established trade, Plaintiffs reasonably could have been intimidated into settling." In the lawsuit *Duckworth v. Pratt & Whitney*, Inc., 152 F.3d 1 (1st Cir. 1998), the United States Court of Appeals for the First Circuit stated that "As both Duckworth and the Secretary of Labor persuasively argue, the achievement of these objectives would be frustrated by adopting Pratt & Whitney's interpretation. That interpretation would permit an employer to evade the Act by blacklisting employees who have used leave in the past or by refusing to hire prospective employees if the employer suspects they might take advantage of the

Act." The United States Court of Appeal's use of the term "leave" refers to medical leave. The United States Court of Appeals use of the term "Act" refers to the Family and Medical Act of 1993. In the case *Davis v. Paul, et al*, 505 F.2d 1180, the United States Court of Appeals for the Sixth circuit stated that "Few things are as fundamental to our legal system as the presumption of innocence until overcome by proof of guilt beyond a reasonable doubt at a fair trial. The dissemination of the flier in the case at bar is in the face of the presumption of innocence, disregards the Due Process Clause and is based on evidence that is not probative of guilt. Condemning a man to a suspect class without a trial and on a wholly impermissible standard, as in the case at bar, offends the very essence of the Due Process Clause, i.e., protection of the individual against arbitrary action. *Slochower v. Board of Education*, 350 U.S. 551, 559, 76 S.Ct. 637, 100 L.Ed. 692 (1956); *Peters v. Hobby*, 349 U.S. 331, 351-352, 75 S.Ct. 790 (1955) (Douglas, J., concurring.) As said by Mr. Justice Black in his concurring opinion in *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 144-145, 71 S.Ct. 624, 634 (1951): 'Our basic law, however, wisely withheld authority for resort to executive. . .condemnations and blacklists as a substitute for imposition of legal types of penalties by courts following trial and conviction in accordance with procedural safeguards of the Bill of Rights.'" The United States Equal Employment Opportunity Commission's, (EEOC) Office of Legal Counsel the Americans with Disabilities Act of 1990 and the Family and Medical Leave Act of 1993 overlap, and that where employees are concerned, "ADA Title II covers all public employers without regard to the number of employees." By this action, Plaintiff seeks to put an end to New York State's practice of blacklisting the Plaintiff by refusing to provide her with outpatient psychiatric care and accommodations required to be provided by the New York State Unified Court System as its

courts are covered under Title II of the Americans With Disabilities, and by ending the corporate defendants' use of the media to encourage members of the not-for-profit psychiatric outpatient community to blacklist the Plaintiff by publicly denigrating her because of symptoms of her mental illness that were publicized by government and corporate defendants.

## Commission of RICO Crimes

18) "Racketeering activity" means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: (relating to fraud and related activity in connection with identification documents), Section 1513 (relating to retaliating against a witness, victim, or an informant) . . ."

19) "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, any territory or possession of the United States, any political subdivision, or any department, agency, or instrumentality thereof;

20) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;

21) pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.

22)   <u>Commission of RICO Crimes</u> – "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

23)   <u>Civil Remedies for RICO Crimes</u> – "The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons."

24)   "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of Section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final."

## Campaign Contributions and The Hobbs Act and
## Conspiracy to Deprive Plaintiff and Gentile Constituents of Honest Services

<u>U.S. Supreme Court Mandate</u>

25)     "This is not to say that it is impossible for an elected official to commit extortion in the course of financing an election campaign. Political contributions are of course vulnerable if induced by the use of force, violence, or fear. The receipt of such contributions is also vulnerable under the Act as having been taken under color of official right, but only if the payments are made in return for an explicit promise or undertaking by the official to perform or not to perform an official act. In such situations the official asserts that his official conduct will be controlled by the terms of the promise or undertaking. This is the receipt of money by an elected official under color of official right within the meaning of the Hobbs Act." *McCormick v. United States*, 500 US 257.

26)     "The requirement of a *quid pro quo* means that without pretense of any entitlement to the payment, a public official violates §1951 if he intends the payor to believe that absent payment the official is likely to abuse his office and his trust to the detriment and injury of the prospective payor or to give the prospective payor less favorable treatment if the *quid pro quo* is not satisfied. The official and the payor need not state the *quid pro quo* in express terms, for otherwise the law's effect could be frustrated by knowing winks and nods. The inducement from the official is criminal if it is express or if it is implied from his words and actions, so long as he intends it to be so and the payor so interprets it." *Evan v. United States*, 112 S.Ct. 1881, 504 U.S. 255, 119 L.Ed.2d 57.

18 USC § 1951 - Interference with Commerce by Threats or Violence

27)     "Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both."

28)     "The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."

When Is a Campaign Contribution a Bribe?[2]

29)     "The Supreme Court's guidance on the issue is thin. In 1991, it ruled that a campaign contribution could be a bribe if prosecutors proved a *quid pro quo* — that the contribution was "made in return for an explicit promise or undertaking by the official to perform or not to perform an official act." In a subsequent case, Justice Anthony Kennedy said the *quid pro quo* need not be expressly stated."

Criminal Resource Manual 2404, Hobbs Act—Under Color of Official Right

30)     Some courts have held that a Hobbs Act violation does not require that the public official have *de jure* power to perform any official act paid for as long as it was reasonable to believe that he/she had the *de facto* power to perform the requested act. *See United States v. Nedza*, 880 F.2d 896, 902 (7th Cir. 1989) (victim reasonably believed state senator had the ability to impact a local business); *United States v. Bibby*, 752 F.2d 1116, 1127-28 (6th Cir. 1985); *United States v. Sorrow*, 732 F.2d 176, 180 (11th Cir. 1984); *United States v. Rindone*, 631 F.2d

_____
2   Washington Post, by Robert Barnes, August 12, 2012

491, 495 (7th Cir. 1980) (public official can extort money for permit beyond control of his office, so long as victim has a reasonable belief that he could affect issuance); *United States v. Rabbitt*, 583 F.2d 1014 (8th Cir. 1978), *cert. denied*, 439 U.S. 1116 (1979); *United States v. Harding*, 563 F.2d 299 (6th Cir. 1977), *cert. denied*, 434 U.S. 1062 (1978); *United States v. Brown*, 540 F.2d 364 (8th Cir. 1976); *United States v. Hall*, 536 F.2d 313 (10th Cir.), *cert. denied*, 429 U.S. 919 (1976); *United States v. Hathaway*, 534 F.2d 386 (1st Cir.), *cert. denied*, 429 U.S. 819 (1976); *United States v. Mazzei*, 521 F.2d 639, 643 (3rd Cir.) (en banc), *cert. denied*, 423 U.S. 1014 (1975); *United States v. Price*, 507 F.2d 1349 (4th Cir. 1974).

31)     Some courts have held that *private* persons who are not themselves public officials can be convicted under this provision if they *caused* public officials to perform official acts in return for payments to the non-public official. *United States v. Margiotta*, 688 F.2d 108 (2d Cir. 1982), *cert. denied*, 461 U.S. 913 (1983) (court upheld conviction of head of local Republican Party under color of official right where defendant could be said to have *caused*, under 18 U.S.C. §2(b), public officials to induce a third party to pay out money); *see United States v. Haimowitz*, 725 F.2d 1561, 1572-73 (11th Cir.), *cert. denied*, 469 U.S. 1072 (1984) (private attorney's conviction of Hobbs Act violation upheld due to complicity with state senator); *United States v. Marcy*, 777 F.Supp. 1398, 1399-400 (N.D.Ill. 1991); *United States v. Barna*, 442 F.Supp. 1232 (M.D. Pa.), *aff'd mem.*, 578 F.2d 1376 (3rd Cir.), *cert. denied*, 439 U.S. 862 (1978). *But see United States v. McClain*, 934 F.2d 822, 829-32 (7th Cir. 1991) ("we believe that, as a general matter and with caveats as suggested here, proceeding against private citizens on an 'official rights' theory inappropriate under the literal and historical meanings of the

Hobbs Act, irrespective of the actual 'control' that citizen purports to maintain over governmental activity").

32)　"The Supreme Court has held that, when an allegedly corrupt payment masquerades as a campaign contribution, and when there is no evidence that the corpus of the "contribution" inured to the personal benefit of the public officer in question or was a product of force or duress, the Hobbs Act requires proof of a *quid pro quo* agreement between the contributor and the public officer. *McCormick v. United States*, 500 U.S. 257 (1991). However, the Court has also held that proof that a *quid pro quo* agreement existed in a corruption case brought under the Hobbs Act may be proven circumstantially. *Evans v. United States*, 504 U.S. 255 (1992). This interpretation of the dimensions of the Hobbs Act in corruption scenarios is consistent with the parameters of the facts needed to prove the federal crimes of bribery and gratuities under 18 U.S.C. §201." *See United States v. Brewster*, 50-6 F.2d 62 (D.C. Cir. 1972), 9 U.S.A.M. §§85.101 through 85.105, *supra*.

### Fraud Upon the Court

33)　"Whenever any officer of the court commits fraud during a proceeding in the court, he/she is engaged in fraud upon the court. In *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985), the court stated "Fraud upon the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. . . It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function --- thus where the impartial functions of the court have been directly corrupted."

34)     Fraud upon the court has been defined by the 7th Circuit Court of Appeals to embrace that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Kenner v. Commissioner of Internal Revenue*, 387 F.3d 689 (1968); 7 Moore's Federal Practice, 2d ed., p.512, ¶ 60.23. The 7th Circuit further stated "a decision produced by fraud upon the court is not in essence a decision at all, and never becomes final."

35)     Fraud upon the court makes void the orders and judgments of that court.

36)     Plaintiff offers as persuasive authority, laws of the State of Illinois. In Illinois law, "it is also clear and well-settled . . .that any attempt to commit fraud upon the court vitiates the entire proceeding. The *People of the State of Illinois v. Fred E. Sterling*, 357 Ill. 354; 192 N.E. 229 (1934) ("The maxim that fraud vitiates every transaction into which it enters applies to judgments as well as to contracts and other transactions."); *Allen F. Moore v. Stanley F. Sievers*, 336 Ill. 316; 168 N.E. 259 (1929) ("The maxim that fraud vitiates every transaction into which it enters ..."); *In re Village of Willowbrook*, 37 Ill.App.2d 393 (1962) ("It is axiomatic that fraud vitiates everything."); *Dunham v. Dunham*, 57 Ill.App. 475 (1894), affirmed 162 Ill. 589 (1896); *Skelly Oil Co. v. Universal Oil Products Co.*, 338 Ill.App. 79, 86 N.E.2d 875, 883-4 (1949); *Thomas Stasel v. The American Home Security Corporation*, 362 Ill. 350; 199 N.E. 798 (1935). Under Illinois and Federal law, when any officer of the court has committed "fraud upon the court", the orders and judgment of that court are void, of no legal force or effect."

**Right to Privacy**

37)     The Connecticut statute forbidding use of contraceptives violates the right of

marital privacy which is within the penumbra of specific guarantees of the Bill of Rights. Pp. 381

U. S. 481-486. The foregoing cases suggest that specific guarantees in the Bill of Rights have

penumbras, formed by emanations from those guarantees that help give them life and substance.

See *Poe v. Ullman*, 367 U. S. 497, 367 U. S. 516-522 (dissenting opinion). Various guarantees

create zones of privacy. The right of association contained in the penumbra of the First

Amendment is one, as we have seen. The Third Amendment, in its prohibition against the

quartering of soldiers "in any house" in time of peace without the consent of the owner, is

another facet of that privacy. The Fourth Amendment explicitly affirms the "right of the people to

be secure in their persons, houses, papers, and effects, against unreasonable searches and

seizures." The Fifth Amendment, in its Self-Incrimination Clause, enables the citizen to create a

zone of privacy which government may not force him to surrender to his detriment. The Ninth

Amendment provides: "The enumeration in the Constitution, of certain rights, shall not be

construed to deny or disparage others retained by the people." The Fourth and Fifth Amendments

were described in *Boyd v. United States*,116 U. S. 616, 116 U. S. 630, as protection against all

governmental invasions "of the sanctity of a man's home and the privacies of life." We recently

referred in *Mapp v. Ohio*, 367 U. S. 643, 367 U. S. 656, to the Fourth Amendment as creating a

"right to privacy, no less important than any other right carefully an particularly reserved to the

people." See *Beaney*, The Constitutional Right to Privacy, 1962 Sup. Ct. Rev. 212; *Griswold*, The

Right to be Let Alone, 55 Nw. U.L. Rev. 216 (1960). . .*NAACP v. Alabama*, 377 U. S. 288, 377

U.S. 307. Would we allow the police to search the sacred precincts of marital bedrooms for

telltale signs of the use of contraceptives? The very idea is repulsive to the notions of privacy surrounding the marriage relationship." *Griswold v. Connecticut*, 381 U.S. 479 (1965)

38)     According to the Health Insurance Portability and Accountability Act of 1996's Wrongful Disclosure of Individually Identifiable Health Information, it says that: "(a) Offense – A person who knowingly and in violation of this part -- (1) uses or causes to be used a unique health identifier; (2) obtains individually identifiable health information relating to an individual; or (3) discloses individually identifiable health information to another person, shall be punished as provided in subsection (b). (b) Penalties – A person described in subsection (a) shall -- (1) be fined not more than $50,000, imprisoned not more than 1 year, or both; (2) if the offense is committed under false pretenses, be fined not more than $100,000, imprisoned not more than 5 years, or both; and (3) if the offense is committed with intent to sell, transfer, or use individually identifiable health information for commercial advantage, personal gain, or malicious harm, be fined not more than $250,000, imprisoned not more than 10 years, or both." See *United States of America v. Huping Zhou*, 2:08-cr-01356-AJW-1.

### National Security Letters

39)     "The Director of the Federal Bureau of Investigation, or his designee in a position not lower than Deputy Assistant Director at Bureau headquarters or a Special Agent in Charge in a Bureau field office designated by the Director, may: (1) request the name, address, length of service, and local and long distance toll billing records of a person or entity if the Director (or his designee) certifies in writing to the wire or electronic communication service provider to which the request is made that the name, address, length of service, and toll billing records sought are relevant to an authorized investigation to protect against international terrorism or clandestine

intelligence activities, provided that such an investigation of a United States person is not conducted solely on the basis of activities protected by the first amendment to the Constitution of the United States; and (2) request the name, address, and length of service of a person or entity if the Director (or his designee) certifies in writing to the wire or electronic communication service provider to which the request is made that the information sought is relevant to an authorized investigation to protect against international terrorism or clandestine intelligence activities, provided that such an investigation of a United States person is not conducted solely upon the basis of activities protected by the first amendment to the Constitution of the United States." in the stipulation and order regarding the case *Doe et al. v. Holder, et al* it says: "3) Plaintiff    John Doe is hereby permitted to identify himself and his company as the recipient of the NSL that has been the subject of this litigation. Plaintiffs ACLU and ACLU Foundation may publicly disclose this information as well. In addition, the Government acknowledges that plaintiffs may discuss matters and information that have been filed without redaction on the public docket in this case; 4) Plaintiffs are also permitted to publicly discuss plaintiff Doe's personal background, background about his company, the services Doe generally provided to his clients, and his type of clientele generally, including (a) the information that is redacted in the public filing of the Third Declaration of John Doe, dated August 21, 2009, Paragraph 1; (b) the information that is redacted in the public filing of the Second Declaration of John Doe, dated September 8, 2006, Paragraph 4; and (c) the information that is redacted in the public filing of the Second Declaration of John Doe, dated September 8, 2006, Paragraph 37. . . 6) Nothing in this Stipulation shall affect plaintiff Doe's right and plaintiffs ACLU and ACLU Foundation's right, if any, to petition in the future under 18 U.S.C. § 3511(b) ('or an order modifying or setting aside

the nondisclosure requirement imposed in connection with the NSL served on plaintiff Doe."
*Doe, et al v. Holder, et al*, 04 Civ. 2614 (VM)

### "Justice Must Satisfy The Appearance of Justice"

40)   Courts have repeatedly held that positive proof of the partiality of a judge is not a requirement, only the appearance of partiality. *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 108 S.Ct. 2194 (1988) (what matters is not the reality of bias or prejudice but its appearance); *United States v. Balistrieri*, 779 F.2d 1191 (7th Cir. 1985) (Section 455(a) "is directed against the appearance of partiality, whether or not the judge is actually biased.") ("Section 455(a) of the Judicial Code, 28 U.S.C. §455(a), is not intended to protect litigants from actual bias in their judge but rather to promote public confidence in the impartiality of the judicial process."

41)   In *Pfizer Inc. v. Lord*, 456 F.2d 532 (8th Cir. 1972), the Court stated that "It is important that the litigant not only actually receive justice, but that he believes that he has received justice."

42)   The Supreme Court has ruled and has reaffirmed the principle that "justice must satisfy the appearance of justice", *Levine v. United States*, 362 U.S. 610, 80 S.Ct. 1038 (1960), citing *Offutt v. United States*, 348 U.S. 11, 14, 75 S.Ct. 11, 13 (1954).

### Rights of Crime Victims

43)   It has been the Plaintiff's sad experience that the judicial defendants' complicity with regard to implementation of the horrible Talmudic *Law of the Moser* has developed in them a delusion that has made them both arrogant and stupid, as though U.S. law is written in Greek or Chinese, and the Plaintiff lacks the ability to either research it, or that if she researches it, she

cannot understand it. To force the defendants to divest themselves of said delusion, Plaintiff has chosen to copy and paste federal criminal law as it pertains to crime victims. The Plaintiff demands that defendants recognize that the following is in English, and Plaintiff is not a dumb schvartze. Plaintiff can read English – legalese included.

44)    Rights of Crime Victims.— A crime victim has the following rights:

a)    The right to be reasonably protected from the accused. The right to reasonable, accurate, and timely notice of any public court proceeding or any parole proceeding, involving the crime or of any release or escape of the accused.

b)    The right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding.

c)    The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding.

d)    The reasonable right to confer with the attorney for the Government in the case.

e)    The right to full and timely restitution as provided in law.

f)    The right to proceedings free from unreasonable delay.

g)    The right to be treated with fairness and with respect for the victim's dignity and privacy.

45)    18 USC §3771 contains other rights specific to crime victims; Plaintiff trusts, however, that defendants are sufficiently convinced on Plaintiff's level of intelligence that she does not have waste either ink or paper cutting and pasting the law. If even after this, the

defendants are arrogantly unconvinced, the defendants can visit http://www.law.cornell.edu/uscode/text/18/3771 after they facilitate the arrest of corrupt, lying, racist, racketeering Jewish attorneys Allen E. Kaye, Harvey Shapiro and Jack Gladstein for their act of fraud and aggravated identity theft by filing their fraudulent affirmations that criminally hold "Godwin Uzamere" to be Plaintiff's husband and the father of Plaintiff's daughter without presenting USCIS-issued identification cards or passports for both Ehigie Edobor Uzamere and "Godwin Uzamere."

### Continuing Violations Doctrine

46)     This Court has jurisdiction over the action pursuant to *Morgan v. National Railroad Passenger Corporation, DBA Amtrak*, 232 F.3d 1008 (November 8, 2000) with regard to the continuing violations doctrine, in which the U.S. Supreme Court stated in its decision that "the continuing violations doctrine. . .allows courts to consider conduct that would ordinarily be time barred "as long as the untimely incidents represent an ongoing unlawful. . .practice. . .The district court's reliance on *Galloway* was mistaken. This court has never adopted a strict notice requirement as the litmus test for application of the continuing violation doctrine; in fact, in *Fiedler v. UAL Corp.*, 218 F.3d 973 (9th Cir. 2000), we explicitly rejected such an approach from the Fifth Circuit. See id. at 987 n.10. *Fiedler* examined *Berry v. Board of Sup'rs of L.S.U.*, 715 F.2d 971 (5th Cir. 1983), a case which involved equal pay based upon gender discrimination, where the Fifth Circuit created a multi-factor test for determining whether discrete acts of harassment are closely related enough to satisfy the continuing violation theory. The Berry court's final factor, "perhaps of most importance," asked whether the harassing act "should trigger an employee's awareness of and duty to assert his or her rights." *Berry*, 715 F.2d at 981.

We rejected the Berry analysis, holding that test was not "applicable in determining the continuation of a hostile environment." *Fiedler*, 218 F.3d at 987 n.10.

47)    In tort law, if a defendant commits a series of illegal acts against another person, or, in criminal law, if someone commits a continuing crime (which can be charged as a single offense), the period of limitation begins to run from the last act in the series. In the case of *Treanor v. MCI* Telecommunications, Inc., the U.S. Court of Appeals for the Eighth Circuit explained that the continuing violations doctrine "tolls the statute of limitations in situations where a continuing pattern forms due to [illegal] acts occurring over a period of time, as long as at least one incident . . . occurred within the limitations period. In the case *Douglas v. California Department of Youth Authority*, 271 F.3d 812, Dossey Douglas was denied employment by the California Youth Authority because a vision test indicated that he was color-blind. Douglas brought suit against CYA for its failure to hire him under Title I of the ADA. The district court granted summary judgment to CYA on the ground that Douglas' claims are barred by the applicable statutes of limitations. Douglas argued on appeal that his claims are timely under the continuing violations doctrine because the CYA's discriminatory policy was on-going. The U.S. Court of Appeals stated the following: "Applying the continuing violations doctrine to these facts, we are guided by two earlier Ninth Circuit decisions. In *Domingo v. New England Fish Co.*, 727 F.2d 1429 (9th Cir. 1984), amended 742 F.2d 520 (9th Cir. 1984), we considered a class action suit against a cannery operator involving allegations of discrimination on the basis of race in hiring and promotions. The plaintiffs argued that their claims were saved from the time bar by the fact that the discriminatory hiring and promotion polices continued until the plaintiffs brought suit. Id. at 1443. We required the plaintiffs to demonstrate that because of the

discriminatory policy, they were either discriminated against or "exposed to discrimination" during the limitations period. Id. Almost a decade later, we again addressed the issue whether a case was timely under a continuing violations theory based on an alleged systemic discrimination in hiring. *EEOC v. Local 350, Plumbers and Pipefitters*, 998 F.2d 641, 643 (9th Cir. 1993). The EEOC filed an Age Discrimination in Employment Act suit on behalf of union members who were excluded from hiring lists on the ground that they received pension benefits. Id. at 643. We noted that the union's policy that excluded retirees from the hiring lists applied to the class members as early as 1984, five years earlier. Id. at 644. We found that the action was not barred by the relevant statute of limitations, because the discriminatory policy prohibiting retirees from joining the hiring lists continued. Id. ("Here, Local 350's allegedly discriminatory policy was in effect when [the plaintiff] first encountered [the policy] in 1984 and remains in force today. Thus, under the continuing violations doctrine, relief for [the plaintiff] is not barred."). Although we did not cite *Domingo* in our analysis in Local 350, the two decisions are consistent. In Local 350, the plaintiffs, as union members, continued to be "exposed" to the discriminatory hiring policies of the union." The U.S. Court of Appeals for the Ninth Circuit finally decided that ". . .With  respect  to  the  ADA  claim. . .We REVERSE  the  district  court's  grant  of summaryjudgment on both the Rehabilitation Act and ADA claims because we conclude that the claims were timely filed under the continuing violations doctrine."

### Code of Conduct for Judges and Attorneys

<u>Federal Code of Conduct for Judges</u>

48)     A judge should take appropriate action upon learning of reliable evidence indicating the likelihood that a judge's conduct contravened this Code or a lawyer violated applicable rules of professional conduct.

49)     A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances in which . . . the judge or the judge's spouse, or a person related to either within the third degree of relationship, or the spouse of such a person is . . .a party to the proceeding, or an officer, director, or trustee of a party.

<u>Code of Conduct for New York State Judges</u>

50)     A judge who receives information indicating a substantial likelihood that another judge has committed a substantial violation of this Part shall take appropriate action.

51)     A judge who receives information indicating a substantial likelihood that a lawyer has committed a substantial violation of the Code of Professional Responsibility shall take appropriate action.

<u>New York Lawyer's Code of Professional Responsibility</u>

52)     A lawyer possessing knowledge, (1) not protected as a confidence or secret, or (2) not gained in the lawyer's capacity as a member of a bona fide lawyer assistance or similar program or committee, of a violation of DR 1-102 [1200.3] that raises a substantial question as to another lawyer's honesty, trustworthiness or fitness as a lawyer shall report such knowledge to a tribunal or other authority empowered to investigate or act upon such violation.