# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CHERYL D. UZAMERE, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 13-505S |
| | : | |
| UNITED STATES OF AMERICA, et al., | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

Patricia A. Sullivan, United States Magistrate Judge

After fourteen failed attempts at filing a *pro se* complaint *in forma pauperis* in the federal courts in the Southern and Eastern Districts of New York and the Court of Federal Claims,[1] Plaintiff Cheryl D. Uzamere, a resident of Brooklyn, New York, has turned to the District of Rhode Island. Despite the lack of any Rhode Island relationship to her case, she chose this District to file her 184-page Amended Complaint, along with 27 exhibits comprising 604 pages, 457 pages of Motions, a Stipulation and an Exhibit Redaction List, for a grand total of 1245 pages.

Plaintiff's massive Amended Complaint is based on allegations arising from her 1979 marriage and subsequent abandonment by her alleged husband,[2] Defendant Nigerian Senator Ehigie Edobor Uzamere. She contends that she has been prevented from exposing the truth about her marriage and otherwise been the victim of various constitutional deprivations and statutory injuries caused by a massive conspiracy involving the United States, the State and City of New York, federal and state judges from New York, judges from the Court of Federal Claims,

---

[1] Plaintiff has filed many more suits in the state courts of New York.

[2] Whether Senator Uzamere or some other person named Uzamere was her husband is an issue that she has tried to litigate, an effort that she alleges has been foiled by the criminal conspiracy of Defendants.

one judge from New Jersey, and hundreds of other public officials (federal officials, officials from New York State and City, and two Vermonters affiliated with the Vermont Professional Responsibility Program), as well as approximately fifty non-governmental individuals and entities.  Some are named because they have declined to act as she demanded or because she sent materials to them, but others who seemingly have never had contact with her are also included. In all, she names between five and six hundred defendants in the caption of her Amended Complaint.

Plaintiff's filing includes six Motions, a proposed Stipulation and an Exhibit Redaction List:

- Application to Proceed in District Court Without Prepaying Fees or Costs

- Plaintiff's Motion for Special Appointment of Person to Serve Process Pursuant to Fed. R. Civ. P. 4(c)(3) and to Serve Process on Last Known Address Pursuant to Fed. R. Civ. P. 5(b)(2)(C)

- Plaintiff's Motion to Hold Action in Abeyance Pursuant to Fed. R. Civ. P. 7(b) and to Enjoin Defendants

- Plaintiff's Emergency Motion for Expedited Judicial Notice of Adjudicative Facts Pursuant to Fed. R. Evid. 201 and For Conversion of Plaintiff's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56

- Stipulation to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) and To Report Federal Offense Pursuant to 18 U.S.C. § 4, Misprision of Felony (Jury Trial Demanded)

- Plaintiff's Emergency Motion for an Expedited Temporary Restraining Order Enjoining Defendants from Filing Flurries of Obstructive Motions until the Court Judicially Notices the Identities of Defendant Ehigie Uzamere and "Godwin Uzamere" and to Enjoin Defendant Garaufis and All Other Judicial Defendants from Authorizing Present and Further National Security Letters as Violating the First Amendment Pursuant to Fed. R. Civ. P. 65(a)(1)(2)(b) (1)(A)(B)(2)(3)(4), 18 U.S.C. § 4, 18 U.S.C. § 1028, 18 U.S.C. § 1028A, 18 U.S.C. § 2709(b)(1), 18 U.S.C. § 1962 and 18 U.S.C. §§ 1512, 1513

- Plaintiff's Motion for Judicial Recusal Specifically of Defendant Garaufis and Generally of All Judges Named as Defendants Pursuant to 28 USC § 455(b)(5)(i), 28 U.S.C. § 455(b)(1) and 28 U.S.C. § 144

- Exhibit Redaction List

The Motions have been referred to me for findings and recommended disposition. Because one of the Motions is Plaintiff's request to proceed *in forma pauperis* ("IFP"), her Amended Complaint is subject to preliminary screening under 28 U.S.C. § 1915(e)(2)(B). For the reasons set out below, I conclude that her Amended Complaint should be DISMISSED because it is frivolous and malicious, fails to state a claim and seeks monetary relief against defendants who are immune from such relief. Id. I further conclude that certain aspects of the Amended Complaint should be DISMISSED because this Court lacks subject matter jurisdiction. Because the Amended Complaint should not survive screening, I recommend that her IFP Motion (ECF No. 2) should be DENIED as moot. I also recommend that all of the other Motions should be DENIED. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1).

## I.    **The Amended Complaint**

The tale laid out in Plaintiff's Amended Complaint begins with her 1979 marriage and abandonment by an individual she claims she later learned was a senator in Nigeria. Her summary captures the essence of the core episode from which the rest springs:

> Defendants' criminal conduct deprived [Plaintiff and her daughter Tara] then, and continues to deprive Plaintiff and her family of the right to bear Defendant Ehigie Edobor Uzamere correct African name, and continues to condemn Plaintiff and her family to the same deprivation of the knowledge of African bloodline indicators that racist Jews and racist white Christians forced upon Plaintiff's African ancestors.

Amended Complaint at 54. In connection with this core episode, Plaintiff names as Defendants the individual she claims was her husband and the group of attorneys who allegedly were involved with the marriage, divorce and related immigration issues. Because Plaintiff's "anti-

3

Semitic" and "wacko" behavior became the subject of a news article[3] that Plaintiff claims is defamatory, the Amended Complaint names the companies and individuals involved with the article.  As she has failed to achieve her goals from courts and various federal, New York State and New York City agencies, the judges, legislators, and public servants who have displeased her have been added as Defendants.  For example, she asked New York Congressional Representative Hakeem Jeffries to initiate a criminal investigation of her ex-husband and the attorneys; not satisfied with his response, she named him, his staff and his campaign contributors.[4]

More recently, she claims that various officials (like United States Attorney General Holder) have allowed her to be accused wrongly of making threats against some of the judges and officials who have become the targets of her ire.  As a result, the Amended Complaint asserts, the inaction of these officials have caused her telephone calls to be spied on and national security letters to be sent for her private information; she also claims that various public officials are responsible for her involuntary hospitalization.

Plaintiff's Amended Complaint is arranged in nine Counts:

| | |
|---|---|
| Count I: | First Amendment – Separation of Church and State |
| Count II: | Americans with Disabilities |
| Count III: | Sixth Amendment |
| Count IV: | Civil Rights Act of 1964, Title VI, § 601 (Nondiscrimination in Federally Assisted Programs) |

---

[3] These quotations come from the article, which was adjudged to be non-defamatory, as both true and a non-actionable statement of opinion.  See Uzamere v. Daily News, L.P., 946 N.Y.S.2d 69, at *2-3 (N.Y. Sup. Ct. 2011) (unreported table decision) (article is true in that Plaintiff's internet postings are "virulently anti-Semitic;" characterization of Plaintiff as "wacko" was opinion based on Plaintiff's undisputed behavior in "screaming and ripping off her clothes before her arraignment . . . on charges of threatening to kill a Brooklyn judge").

[4] In her Prayer for Relief, Plaintiff asks this Court to issue a subpoena to get the names of more of his contributors, presumably so that they also can be sued.  Amended Complaint at 172.

| Count V: | Racketeer Influenced and Corrupt Organizations |
|---|---|
| Count VI: | Fraud on the Court |
| Count VII: | Blacklisting of Plaintiff in Violation of 42 U.S.C. §§ 1983, 1985 |
| Count VIII: | Invasion of Privacy Based on Intentional Misuse of National Security Letter or Based on Obtaining Non-National Security Letter, Non-Content Information Illegally |
| Count IX: | Campaign Bribery to Advance the Talmudic Law of the Moser; Congressional Defendant Deprived Plaintiffs and Gentiles of Honest Services. |

In addition to these claims, the Amended Complaint is replete with a host of other constitutional and statutory theories, making it difficult to ascertain whether there might be a viable claim buried among them.  Nevertheless, in an attempt to rationalize at least her raw constitutional claims (such as those grounded in the First, Fourth and Sixth Amendments), and reading her Amended Complaint liberally as her *pro se* status requires, the Court assumes, where appropriate, that they are asserted through the customary vehicles of either Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), for federal agents, or 42 U.S.C. § 1983, for state actors.  Day v. Ibison, No. 13-2121, 2013 WL 3722329, at *1 (3d Cir. July 17, 2013) (per curiam) (unpublished) (*pro se* complaint construed liberally as if brought pursuant to Bivens against FBI agent for failure to conduct criminal investigation); Fredyma v. Massachusetts, 961 F.2d 1565, at *2 (1st Cir. 1992) (per curiam) (unpublished table opinion) (construing *pro se* complaint against state actors as brought under § 1983); Campbell v. Cornell Corr. of Rhode Island, Inc., 564 F. Supp. 2d 99, 102 (D.R.I. 2008) (construing *pro se* § 1983 complaint liberally).

A dominant theme of Plaintiff's Amended Complaint and Motions is that the actions against her were fueled by a Jewish conspiracy.  Because she claims that this "Jew-based

corruption" pervades the New York judiciary, both state and federal, she has named (she claims) every judge in New York from the Second Circuit to the New York Supreme Court, the members of the New York and federal House and Senate Judiciary Committees, and (seemingly) all of the federal and Brooklyn public defenders, for the express purpose of forcing mass recusals pursuant to 28 U.S.C. §§ 144, 455, thereby avoiding venue in New York.  She has filed in the District of Rhode Island in the express hope that this District will either accept the claim or force Defendants (all five to six hundred of them) to consent to transfer to another venue.  Amended Complaint at 56-58.

In her prayer for relief, *inter alia*, Plaintiff seeks:

- damages of $1 billion;

- the initiation of criminal investigations of the judges who authored decisions ruling against her, Nigerian Senator Uzamere, the attorneys involved with her immigration, marriage and divorce, and various U.S. Marshals;

- an injunction restraining Defendants "from engaging in any form of S.L.A.P.P. litigation;"

- various actions restricting the judicial functions of District Judge Garaufis of the Eastern District of New York, including an order that he impose criminal liability on various persons and an order rendering one of his judicial opinions null and void;

- an order compelling the Second Circuit Court of Appeals to "establish proof" of whether and what judge considered the appeals in two of Plaintiff's cases;

- the issuance of subpoenas related to Plaintiff's marriage, the defamatory news article, the national security letters and Congressman Jeffries' congressional campaign contributors and an order barring some of Defendants from obtaining discovery;

- an order ensuring that no federal judge will ever make "any statement that questions Plaintiff's mental state;" and

- a public apology.

II.       <u>Prior Litigation</u>

A survey of public databases suggests that Plaintiff has brought at least fourteen federal cases and countless state cases, many of which address matters also asserted in this Amended Complaint.[5]  This Amended Complaint appears to be a salmagundi of her prior lawsuits tossed into a single gargantuan pleading – there are at least eleven substantive decisions dismissing claims that overlap with what Plaintiff asserts here.  Because the *res judicata* and collateral estoppel effects of these decisions and the maliciousness of this Amended Complaint when read in light of this history (including the many warnings against frivolous or malicious filings) are among the reasons why this Amended Complaint should be dismissed, I describe them in some detail arranged loosely in chronological order.

The first reported dismissal of interest is <u>Uzamere v. John Doe</u>, 07-CV-2471 (NGG), slip op. (E.D.N.Y. July 6, 2007), in which Judge Garaufis dismissed claims arising from the claimed marriage to Nigerian Senator Uzamere based on the lack of federal subject matter jurisdiction over domestic relations.[6]  <u>Id.</u> at 2-4.  Plaintiff's next case was dismissed by <u>Uzamere v. Rice</u>, 08-CV-891 (NGG), slip op. (E.D.N.Y. Apr. 8, 2008), also penned by Judge Garaufis.  Like the instant Amended Complaint, though its size and scope was not as vast (and missing the vitriolic attacks on Judge Garaufis that pervade subsequent lawsuits, including this Amended Complaint), this one sued various federal, New York City and State officials and individuals, including Senator Uzamere and the group of lawyers who were involved with matters related to Plaintiff.

---

[5] Plaintiff's Amended Complaint includes her recitation of her prior litigation history.  Am. Compl. at 58-69 (alleging that each decision is, or may be, an "act of fraud on the court," an "act of racketeering" or an "act of obstruction of justice").  The cases laid out in this Report and Recommendation are those that were located through research using public databases.  Decisions involving Plaintiff that are not publicly available are not presented here.

[6] Plaintiff also brought her domestic relations claims against Senator Uzamere in the New York courts during the period when she was bringing federal lawsuits raising the same issues.  While not much of this history is reported, a glimpse into what was likely very extensive litigation is available from <u>Uzamere v. Uzamere</u>, 889 N.Y.S.2d 495 (N.Y. App. Div. Dec. 8, 2009), in which the Appellate Division of the New York Supreme Court affirmed the denial of her motions for child support and for a determination that Senator Uzamere had been her husband.  <u>Id.</u> at 495.

Id. at 3-8.  Judge Garaufis thoughtfully examined each of the ten counts and found each failed to state a claim.  As in the instant Amended Complaint, misprision of felony, obstruction of justice, extortion and the Patriot Act were invoked to compel criminal proceedings against various defendants for failing to investigate Senator Uzamere and the group of attorneys – because these are criminal statutes, Judge Garaufis held that they cannot be the basis for a claim in a civil action.  Id.  Similarly, Judge Garaufis dismissed claims under the Civil Rights Act, Federal Rehabilitation Act and Americans with Disabilities Act because they were based on the defendants' failure to report and prosecute her husband.  Id. at 4-5.  The RICO claim was dismissed because the complaint failed to allege and prove an enterprise.  Id. at 4.

Judge Garaufis closed his Memorandum and Order with a warning that Plaintiff's privilege of proceeding IFP would be denied if she persisted in pressing claims grounded in her dispute with her estranged husband by citing inapplicable federal statutes and naming improper federal defendants.  Id. at 8.  When Plaintiff persisted, on February 25, 2011, Judge Garaufis entered an Order noting that Plaintiff had repeatedly been warned to refrain from sending frivolous, vexatious and harassing submissions, and directing the Clerk to decline to docket her most recent submission.  Order, 08-CV-891 (NGG), at 2 (E.D.N.Y. Mar. 1, 2011).

Chronologically, Plaintiff's next case with a reported decision arising from the same core episode involving Senator Uzamere is In the Matter of Cheryl Uzamere v. Jeffrey Sunshine, 868 N.Y.S.2d 139 (N.Y. App. Div. Nov. 25, 2008).  In this suit against a judge of a New York Supreme Court, Plaintiff sought an order barring him from proceeding with her divorce.  Her claim was dismissed because she did not demonstrate a clear legal right to the relief sought and because mandamus lies only to compel performance of a ministerial act.  Id. at 139-40.

In 2009, Plaintiff returned to federal court, this time to the Southern District of New York, and filed a case that she took to the United States Supreme Court.  Uzamere v. Kaye, 09-CV-3506 (LBS) (S.D.N.Y. Apr. 7, 2009), appeal dismissed, Uzamere v. Kaye, 09-1600-cv (2d Cir. 2009), cert. denied, Uzamere v. Kaye, No. 09-5816 (U.S. 2009).  This complaint named the by-now familiar defendants: Nigerian Senator Uzamere and the group of attorneys involved with Plaintiff's marriage, divorce and related events.  Like the instant Amended Complaint, it also sued judges and officials of the City and State of New York.  Judge Leonard Sand dismissed based on the immunity of the judges and governmental officials, and the lack of subject matter jurisdiction over the claims against the private individuals.  He included a stern warning that future filings grounded in complaints related to her husband would lead to her being barred from further filings without leave of court.  Uzamere v. Kaye, 09-CV-3506, text order (April 7, 2009).[7]

Plaintiff reverted to the Eastern District of New York for her next filing.  Uzamere v. New York, 09-CV-2703 (NGG), slip op. at 2-4 (E.D.N.Y. July 9, 2009), appeal dismissed, Uzamere v. New York, 09-3197-cv (2d Cir. Oct. 13, 2009).  This case related partially to a lost Metrocard; however, it also asserted a claim for false arrest under 42 U.S.C. § 1983 against the City of New York and its agencies.  Judge Garaufis afforded Plaintiff great latitude, laying out why her claims against municipal defendants could not proceed in the absence of evidence of an officially adopted policy or custom.  Id. at 3.  Because Plaintiff did not avail herself of the opportunity to file an amended complaint that responded to the identified deficits, the case was dismissed.  Uzamere v. New York, 09-CV-2703 (NGG) (E.D.N.Y. Aug. 11, 2009) (order).

---

[7] Judge Sand's decision is not publicly available.  However, it is quoted at length in Uzamere v. Uzamere, 957 N.Y.S.2d 639, 2, 9 (N.Y. Sup. Ct. 2010) (unreported table decision), aff'd, Uzamere v. Uzamere, 933 N.Y.S.2d 336 (N.Y. App. Div. 2011).

Plaintiff's next filing worth mention does not reference Senator Uzamere, but rather seeks damages of $5 million due to lost mail.  It is noteworthy because Judge Garaufis's opinion lays out the doctrine of sovereign immunity in dismissing the complaint.  Uzamere v. United States Postal Serv., 09-CV-3709 (NGG), slip op. at 2-4 (E.D.N.Y. Oct. 15, 2009).  It is also significant because Judge Garaufis warns Plaintiff that she will be precluded from IFP status if she continues to file frivolous complaints and refers her to case law that lays out the sanctions a court may impose on vexatious litigants.  Id. at 4 (citing In re Martin-Trigonia, 9 F.3d 226, 227-29 (2d Cir. 1993)).

Undeterred, Plaintiff returned to the New York Supreme Court with a suit seeking $100,000,000, based on her prosaic dispute with Senator Uzamere and the group of attorneys.  Uzamere v. Uzamere, 957 N.Y.S.2d 639, at *2, *9 (N.Y. Sup. Ct. 2010) (unreported table decision), aff'd, Uzamere v. Uzamere, 933 N.Y.S.2d 336 (N.Y. App. Div. 2011).  In this case, Judge Arthur Shack, considering cross motions for summary judgment, wrote a thorough opinion that surveyed Plaintiff's history of litigation in New York state and federal courts, including the warnings by Judge Garaufis in the Eastern District, and Judge Sand in the Southern District, and held that the claims raised in his case had been at least twice rejected on the merits.  He warned that the New York State Unified Court System would not continue to expend scarce public resources on Plaintiff's meritless lawsuits and that her "scorched earth policy against defendants must cease."  Id. at *7.  He enjoined Plaintiff from relitigating the same claims and issues against any of the same defendants in the New York Unified Court System without prior approval by the Administrative Justice or Judge.  Id. at *8-9.  In support of this draconian injunction, he quoted:

> [W]hen, as here, a litigant is abusing the judicial process by hagriding individuals
> solely out of ill will or spite, equity may enjoin such vexatious litigation.

Id. at *8 (quoting Sassower v. Signorelli, 99 A.D.2d 358, 359 (New York Sup. Ct., 2d Dep't, 1984)).

Plaintiff turned next to the United States Court of Federal Claims, where she filed three cases in 2010.  Plaintiff herself dismissed the first; the court consolidated the other two and dismissed both.  Uzamere v. United States, Nos. 10-585C, 10-591C, 2010 WL 3528897, at *2-6 (Fed. Cl. Sept. 3, 2010).  Noting that the allegations concerning her treatment by the judiciary stemmed from the core dispute with Senator Uzamere, Judge Firestone dismissed all claims as outside of the jurisdiction of the Court of Federal Claims.  Id. at *1-2.

In late 2010 and 2011, Plaintiff went to both state and federal court in New York to air her claims of defamation, fraud, various constitutional deprivations and intentional infliction of emotional distress against the Daily News and its reporter, Scott Shifrel, based on news coverage of Plaintiff's litigation regarding her marriage.  Uzamere v. Daily News, L.P., 946 N.Y.S.2d 69, 4 (N.Y. Sup. Ct. 2011) (unreported table decision) (plaintiff's default motion denied, defendants' motion to dismiss granted); Uzamere v. United States Postal Serv., No. 10-cv-07668-LAP (S.D.N.Y. Oct. 6, 2010) (text order dismissing for failure to state a claim at screening).  Judge Eileen Rakower of the New York Supreme Court dismissed Plaintiff's claims, concluding that the complaint revealed that the offending article (entitled "Hate-spewing wacko goes into fit in court") was not defamatory as a matter of law because it was both true and contained opinions accompanied by a recitation of the facts on which it was based.  Daily News, L.P., 946 N.Y.S.2d at *1-2.

The last case found with a reported decision takes the reader back to the Eastern District of New York, and Judge Garaufis, who dismissed as frivolous and malicious an 89-page complaint with 589 pages of exhibits.  Uzamere v. Cuomo, 11-CV-2831 (NGG) (LB), slip op.

(E.D.N.Y. June 22, 2011), <u>appeal dismissed</u>, <u>Uzamere v. Cuomo</u>, 11-2713-cv (2d Cir. Nov. 28,

2011), <u>cert. denied</u>, <u>Uzamere v. Cuomo</u>, No. 11-8206 (U.S. Mar. 19, 2012).  The content of this

complaint appears to be strikingly similar to the instant Amended Complaint, as Judge Garaufis

described it: "[t]he substance of Plaintiff's Complaint – if one can be discerned – concerns,

among other things, her divorce from Ehigie Edobar Uzamere; a defamation claim filed against

the *Daily News*, a Departmental Disciplinary Committee complaint filed against the attorney

representing the *Daily News*; and other state court actions including a state court action against

the attorneys who represented her former husband."  <u>Id.</u> at 2.  In a particularly apt statement,

which appears to have enraged Plaintiff, based on her reference to it in the instant Amended

Complaint, Judge Garaufis wrote that, "Plaintiff has a long, tired history of vexatious litigation in

this court."  <u>Id.</u>

     The instant Amended Complaint, which Plaintiff directed to the District of Rhode Island,

is an amalgamation of the claims and parties described above, although, at 1245 pages (the total

filing), it seems to be longer than any of its antecedents.

## III.   <u>Discussion</u>

    A.   <u>Screening of the Amended Complaint</u>

     Because Plaintiff seeks to proceed IFP, her Amended Complaint is subject to preliminary

screening under 28 U.S.C. § 1915(e)(2), a Sisyphean task given its length and complexity.

Section 1915 authorizes federal courts, at any time, to dismiss actions in which a plaintiff seeks

to proceed without prepayment of fees if the action is frivolous or malicious, fails to state a claim

upon which relief may be granted, or seeks monetary relief against a defendant who is immune

from such relief.  <u>See id.</u>; <u>Denton v. Hernandez</u>, 504 U.S. 25, 32-33 (1992); <u>Neitzke v. Williams</u>,

490 U.S. 319, 325 (1989).  In addition to screening, this Court has an independent obligation to

inquire, *sua sponte*, into its subject matter jurisdiction.  See Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004); see also In re Recticel Foam Corp., 859 F.2d 1000, 1002 (1st Cir. 1988) ("It is too elementary to warrant citation of authority that a court has an obligation to inquire sua sponte into its subject matter jurisdiction, and to proceed no further if such jurisdiction is wanting.").

For purposes of this preliminary evaluation, the Court liberally construes Plaintiff's Amended Complaint because she is *pro se*.  Hodge v. Murphy, 808 F. Supp. 2d 405, 408 (D.R.I. 2011).  Nevertheless, even when read liberally, I find much of this Amended Complaint fails to state a claim, some of it is not within the subject matter jurisdiction of the Court, it is frivolous and malicious and substantial aspects of it seek relief from defendants who are immune.  In making these findings, I observe that this Hydra-esque pleading is defective in many more ways than are enumerated here; however, as the exegesis of defects that follows is more than sufficient to justify dismissal, there is no need to go further.  This Amended Complaint should be dismissed.

B.    Absolute Immunity

Hundreds of the targets of this Amended Complaint are federal and state legislators, sued for actions taken in their legislative capacities, federal and state judicial officers, sued for actions taken in their judicial capacities, court clerks, sued for carrying out the directive of judges, and prosecutors, sued for actions taken in their prosecutorial capacity.  When performing their respective functions, legislators, judicial officers and prosecutors are all protected by absolute immunity.  Van de Kamp v. Goldstein, 555 U.S. 335, 340-43 (2009) (prosecutor enjoys absolute immunity as long as challenged conduct falls within function as advocate for a governmental

entity); Bogan v. Scott-Harris, 523 U.S. 44, 49-51 (1998) (well established that federal, state, and regional legislators are entitled to absolute immunity from civil liability for their legislative activities); Forrester v. White, 484 U.S. 219, 225-28 (1988) (absolute judicial immunity originated in medieval times to discourage collateral attacks on judicial decisionmaking and to insulate judges from vexatious actions by disgruntled litigants); see also Adames v. Fagundo, 198 F. App'x 20, 22 (1st Cir. 2006) (per curiam) (judicial immunity bars suits under § 1983 for money damages and injunctive relief).  Court clerks have absolute quasi-judicial immunity, derivative of their judges' immunity, to the extent that they are alleged to be liable for carrying out the judges' directives.  Slotnick v. Garfinkle, 632 F.2d 163, 166 (1st Cir. 1980); Okereke v. Wood, CA 10-11154-MLW, 2013 WL 697059, at *1 n.2 (D. Mass. Feb. 24, 2013).

Based on the doctrine of absolute immunity of legislators, judges (and court clerks carrying out the judges' directives) and prosecutors, this Court should dismiss with prejudice every aspect of this Amended Complaint that names them and purports to state a claim against them for actions taken in their respective judicial, legislative and prosecutorial capacities; all such claims fail to state a claim, are frivolous and seek monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2); Fiore v. Capineri, CA 11-064L, 2011 WL 972430, at *2 (D.R.I. Mar. 3, 2011) ("A complaint may also be dismissed under Section 1915(e)(2) if it is barred by the doctrine of judicial immunity.").

I further recommend that the entire Amended Complaint be dismissed because these deficiencies pervade it – indeed, to the extent that Plaintiff's claims can be coherently categorized, it would appear that much that is not *res judicata* (simplistically summarized as the claims against Nigerian Senator Uzamere, the related group of attorneys and everyone who refused to criminally prosecute them, as well as the claims against the Daily News and its

reporter) fails based on the absolute immunity of most of the Defendants.  And, as with so many other deficits afflicting this Amended Complaint, absolute immunity is not new to Plaintiff.  See Uzamere v. Kaye, 09-CV-3506 (LBS) (S.D.N.Y. Apr. 7, 2009) (complaint dismissed based on immunity of judges and other government officials with warning about more frivolous filings), appeal dismissed, Uzamere v. Kaye, 09-1600-cv (2d Cir. 2009), cert. denied, Uzamere v. Kaye, No. 09-5816 (U.S. 2009).  This attempt to sue persons who enjoy the protection of absolute immunity in disregard of a prior decision dismissing the same claims with a warning against such filings justifies dismissal of this Amended Complaint in its entirety as frivolous and malicious.  Baker v. Nesi, CIV.A. 11-11899-DJC, 2011 WL 6028069, at *5 (D. Mass. Dec. 2, 2011) (complaint dismissed at screening; "willful ignorance of the doctrine of absolute judicial immunity by continued reassertions of claims against judges may be vexatious and frivolous").

C.    Sovereign Immunity

Plaintiff purports to sue the United States and its agencies, as well as many Defendants (probably several hundred) who are officials and employees of the United States, in their official capacities (as well as their individual capacities).  It is well settled that the federal government, federal agencies and the people who work for them in their official capacities are immune from suit for monetary damages[8] absent a waiver of sovereign immunity.  See e.g., Fed. Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 475 (1994) ("It is axiomatic that the United States may not be

---

[8] Plaintiff asks for other forms of relief, in addition to her prayer for $1 billion in monetary damages.  However, most of the other remedies that she seeks arise from her desire that this Court initiate investigations and criminal proceedings, which are not viable remedies.  See Leeke v. Timmerman, 454 U.S. 84, 87 (1981) (civil litigant cannot obtain criminal remedy); Kathrein v. McGrath, 166 F. App'x 858, 863 (7th Cir. 2006) (affirming dismissal of frivolous claim seeking to compel federal grand jury to investigate alleged crimes committed by the various defendants).  She also asks this Court to exercise supervisory control over federal judges generally, over a District Court within the Second Circuit, as well as over the Second Circuit itself, all of which this Court lacks the power to do.  See Matrix Grp., Ltd. v. Rawlings Sporting Goods Co., 378 F.3d 29, 32 (1st Cir. 2004) (circuit court cannot order district court from another circuit to order an injunction); McKnight v. Shumaker, No. 06-CV-1698, 2006 WL 3086769, at *2 (D. Colo. Oct. 25, 2006) (request for mandamus relief denied because a district court cannot order circuit court to take an action).  Her prayer that this Court enjoin Defendants from engaging in "S.L.A.P.P. litigation" and order a "public apology" are the only non-monetary remedies that conceivably are within the judicial power of this Court to grant.

sued without its consent and that the existence of consent is a prerequisite for jurisdiction")
(citation omitted); Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000) (same).  Because the
United States has not waived sovereign immunity with respect to the claims raised in this case, I
recommend that this Court dismiss with prejudice every such claim based on the lack of subject
matter jurisdiction against the several hundred Defendants who constitute the United States.
Brodzki v. U.S. Dep't of Justice, CIV.A. 11-11796-DJC, 2011 WL 5038995, at *2 (D. Mass.
Oct. 21, 2011) (complaint against Department of Justice dismissed at screening based on
sovereign immunity of the United States).

Because this is not Plaintiff's first attempt to sue the United States, Uzamere v. United
States Postal Serv., 09-CV-3709 (NGG), slip op. at 2-4 (E.D.N.Y. Oct. 15, 2009) (claims against
United States agency barred by doctrine of sovereign immunity and dismissed for lack of subject
matter jurisdiction with warning), the entire Amended Complaint should be dismissed as
malicious based on Plaintiff's conduct in naming so many federal officials who she already
knows are protected by the doctrine of sovereign immunity.

D.      Eleventh Amendment Immunity

New York State's sovereign immunity protects it from Plaintiff's suit for monetary
damages.  The Supreme Court has consistently held that the Eleventh Amendment provides
immunity to an unconsenting State from suits brought in federal courts by her own citizens as
well as by citizens of another state.  Edelman v. Jordan, 415 U.S. 651, 662–63 (1974); Acevedo-
Concepcion v. Irizarry-Mendez, CIV. 09-2133 JAG, 2013 WL 3227880 (D.P.R. June 25, 2013);
see Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985) (unless a State has "waived its Eleventh
Amendment immunity or Congress has overridden it, . . . a State cannot be sued directly in its
own name regardless of the relief sought").  Plaintiff's Amended Complaint names not only the

16

State itself, but also a number of New York agencies and individuals in their official capacities with those agencies; for example, she names individuals with the New York State Office of Mental Health and the New York State Office of Temporary and Disability Insurance.  The Eleventh Amendment extends to confer immunity from suit upon state officials when "the state is the real, substantial party in interest," that is, when "the judgment sought would expend itself on the public treasury . . ., or interfere with the public administration . . . ."  Pennhurst State Sch. & Hosp. v. Haldernman, 465 U.S. 89, 101-02 n.11 (1984).  When state employees are sued for monetary damages for actions taken in their "official capacity," they are immune from suit. Coggeshall v. Massachusetts Bd. of Registration of Psychologists, 604 F.3d 658, 662 (1st Cir. 2010).

To the extent that Plaintiff seeks monetary relief from the State of New York, its agencies and its agents, officials and employees for actions taken in an official capacity, the Eleventh Amendment bars such relief.  All such claims should be dismissed with prejudice.

E.    Municipal Defendants

The constitutional claims in this Amended Complaint cannot proceed against the City of New York or its agencies and officials in their official capacities unless Plaintiff can show the existence of an officially adopted policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right.  See Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658 (1978); Young v. City of Providence, 404 F.3d 4, 25 (1st Cir. 2005) (plaintiff must show that a municipal policy is the moving force behind the constitutional deprivation).  This Amended Complaint is completely lacking in any specific allegations of a policy or custom.  Accordingly, I recommend that all constitutional claims against the City of New York, and its agencies and officials in their official

capacities, be dismissed with prejudice.  <u>Los Angeles Cnty., Cal. v. Humphries</u>, 131 S. Ct. 447,

449 (2010) (municipal policy or custom must exist in § 1983 suit regardless of whether plaintiff

seeks damages or prospective relief).

     F.    <u>Criminal Claims Based on Statutes That Do Not Confer a Private Right of Action</u>

    Much of Plaintiff's Amended Complaint focuses on alleged criminal misconduct, such as

misprision of felony, fraud on the courts, obstruction of justice, campaign bribery and Patriot Act

violations.  A dominant theme is Plaintiff's desire that this Court initiate criminal investigations

and bring criminal charges against many of the Defendants; her claims against other Defendants

arise from their failure to initiate the criminal investigations she believes are warranted.

    It is well settled that the enforcement of criminal statutes is "solely within the discretion

of the prosecutor."  <u>Leeke v. Timmerman</u>, 454 U.S. 84, 87 (1981).  Accordingly, a private citizen

like Plaintiff "lacks a judicially cognizable interest in the prosecution or nonprosecution of

another."  <u>Linda R.S. v. Richard D.</u>, 410 U.S. 614, 619 (1973); <u>see</u> <u>Faust v. Defazio</u>, CIV.A. 12-

11673-NMG, 2012 WL 5064484, at *1 (D. Mass. Oct. 17, 2012) (power to enforce criminal law

vested in executive branch by Constitution; no residual power in private citizens to enforce law

when United States Attorney does not prosecute).  All aspects of the Amended Complaint that

are based on Plaintiff's attempt to engage the power of this Court in the enforcement of criminal

laws against those with whom she is upset should be dismissed with prejudice.[9]  <u>See</u> <u>Veale v.</u>

<u>Penuche's Ale House</u>, 215 F.3d 1313 (1st Cir. 2000) (per curiam); <u>Cannady v. Rathke</u>, C.A. 09-

07S, 2009 WL 335067, at *2 (D.R.I. Feb. 10, 2009).  Because Plaintiff has raised the same

---

[9] In addition to her claims against prosecutors who failed to initiate the criminal proceedings she requested, the Amended Complaint is strewn with claims against individuals to whom and agencies to which Plaintiff sent copies of materials she believes support her claims about her ex-husband's criminality.  For example, she sues two individuals associated with the Vermont Professional Responsibility Program.  The Amended Complaint alleges merely that Plaintiff sent them materials related to Nigerian Senator Uzamere.  Am. Compl. ¶ 127.  Like the claims based on the demand for the initiation of criminal investigations, these allegations fail to state a claim.

claims in prior complaints, which have been dismissed for the same reason, I further recommend that the entire Amended Complaint be dismissed as frivolous and malicious since it is impossible to untangle these claims that fail to state a claim from others that might conceivably give rise to a cause of action.  See 28 U.S.C. § 1915; Uzamere v. Rice, 08-CV-891 (NGG), slip op. at 3-8 (E.D.N.Y. Apr. 8, 2008) (action dismissed for failure to state a claim because claims grounded in criminal statutes that do not contain a private right of action).

       G.     *Res Judicata* and Collateral Estoppel

As the lengthy recitation of Plaintiff's prior litigation history makes clear, much of the substance of this Amended Complaint has previously been dismissed, in many instances on the merits.  Every such claim with identicality of parties should be dismissed based on the doctrine of *res judicata*, which provides that a final judgment on the merits of an action precludes the parties from re-litigating claims that were or could have been raised in the prior action.  Haag v. United States, 589 F.3d 43, 45 (1st Cir. 2009); see also R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006) (forum state's law applies preclusive *res judicata* effect of state court judgments); City of New York v. Schmitt, 50 A.D.3d 1032, 1033, (N.Y. App. Div. 2008). Further, even where identicality of parties is not evident, Plaintiff is barred from relitigating every issue actually raised in the prior cases as long as she was afforded a full and fair opportunity to litigate the issue, based on the doctrine of collateral estoppel.  Rios-Pineiro v. United States, 713 F.3d 688, 691-92 (1st Cir. 2013); Manganella v. Evanston Ins. Co., 700 F.3d 585, 591 (1st Cir. 2012); see also Montoya v. JL Astoria Sound, Inc., 92 A.D.3d 736, 738 (N.Y. App. Div. 2012) (New York[10] applies collateral estoppel when (1) identical issue was necessarily decided in prior action and is decisive in present action; and (2) precluded party had full and fair

---

[10] In determining the preclusive effect of a state court judgment, federal courts must, as a matter of full faith and credit, apply the forum state's law of collateral estoppel.  In re Keach, 204 B.R. 851, 853 (Bankr. D.R.I. 1996).

opportunity to contest prior determination).  In both this Circuit and the State of New York, an issue is raised and actually litigated for collateral estoppel purposes when it is submitted for determination and is determined by the pleadings or on a motion for summary judgment.  Id. at 738, 939 N.Y.S.2d at 94; D'Amario v. Russo, 718 F. Supp. 118, 119, 121 (D.R.I. 1989).

Here, Plaintiff has brought many prior cases that were dismissed on the merits and name many of the same defendants (or the same offices, entities or agencies), rely on the same statutes and arise from a common nucleus of facts that are essentially identical to those asserted here. While a precise analysis of what in this massive Amended Complaint is precluded by *res judicata* is almost impossible (and would require a brobdingnagian expenditure of this Court's resources), much of the Amended Complaint should be dismissed on *res judicata* grounds to the extent that it is no more than another iteration of the same claims.  See Doe v. Harvard Univ., 56 F.3d 59 (1st Cir. 1995) (per curiam) (affirming dismissal under § 1915, reasoning that "[a]lthough [plaintiff] raises different legal theories in the instant case, her claims are nevertheless barred by the doctrine of res judicata since they involve the same parties and arise from the same set of operative facts.").

Claim and issue preclusion should bar at least two major themes that pervade this Amended Complaint.

First, *res judicata* should end forever Plaintiff's claim against Nigerian Senator Uzamere and the group of attorneys who were involved with her marriage, divorce and related immigration issues.  They substantively prevailed in Uzamere v. Uzamere, 957 N.Y.S.2d 639, at *2, *9 (N.Y. Sup. Ct. 2010) (unreported table decision), aff'd, Uzamere v. Uzamere, 933 N.Y.S.2d 336 (N.Y. App. Div. 2011).  To the extent that these claims relate to domestic relations, they were disposed of by Uzamere v. John Doe, 07-CV-2471 (NGG), slip op.

(E.D.N.Y. July 6, 2007), in which Judge Garaufis dismissed claims arising from the claimed marriage to Senator Uzamere based on the lack of federal subject matter jurisdiction over domestic relations.  *Res judicata* arising from <u>Uzamere v. Rice</u>, 08-CV-891 (NGG), slip op. (E.D.N.Y. Apr. 8, 2008), similarly should terminate Plaintiff's claims against the same federal, New York State and New York City officials who were sued in <u>Rice</u> based on their failure to prosecute Senator Uzamere and the group of attorneys.  Collateral estoppel should end the issues that were fully litigated in <u>Uzamere v. Rice</u>, such as Plaintiff's claims based on the Civil Rights Act, the Federal Rehabilitation Act, the Americans with Disabilities Act and RICO.  <u>Id.</u> 3-8.

Second, *res judicata* and collateral estoppel should preclude all of Plaintiff's defamation-based claims as a result of <u>Uzamere v. Daily News, L.P.</u>, 946 N.Y.S.2d 69 (N.Y. Sup. Ct. 2011) (unreported table decision), in which the merits were determined on the pleadings in favor of the Daily News and reporter Scott Shifrel.  <u>Id.</u> at *2.  This holding not only ends Plaintiff's claim here against the Daily News, its owners and its reporter for the same article, but also collaterally estops Plaintiff from relitigating the issue whether anything in the article is defamatory.

Based on Plaintiff's prior cases decided on the merits, much of Plaintiff's Amended Complaint should be dismissed with prejudice by operation of the doctrines of *res judicata* and collateral estoppel.  Because of the difficulty of untangling precluded claims from any that might survive and in light of Plaintiff's blatant disregard of warnings about the preclusive effects of prior decisions, I recommend that this Amended Complaint be dismissed in its entirety.

H.   *Rooker-Feldman* Doctrine

Dismissal of this action is proper to the extent that the claims directly challenge the result of New York State court proceedings; such claims are barred by the *Rooker-Feldman* doctrine. <u>See</u> <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983); <u>Rooker v. Fidelity</u>

21

Trust Co., 263 U.S. 413 (1923).  The *Rooker-Feldman* doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).  The doctrine applies when a plaintiff explicitly or implicitly seeks review of a state court judgment.  See Federación de Maestros v. Junta de Relaciones del Trabajo, 410 F.3d 17, 24 (1st Cir. 2005).

Plaintiff's Amended Complaint is littered with invective against the New York judgments against her.  In several places she claims that the state court judges who rendered the decisions "ignored [her] cries for justice, engaged in fraud upon the court and disobeyed [many statutes and rules]."  Amended Complaint at 68-69, 76-77.  Plaintiff also claims that state court judges "engaged in an act of racketeering, obstruction of justice and aggravated identity theft" by rendering decisions against her.  Amended Complaint at 84.  All such claims should be dismissed with prejudice.  See Adames v. Fagundo, 198 F. App'x 20, 22 (1st Cir. 2006) (*Rooker-Feldman* requires dismissal of action when plaintiff alleges state court judge was biased, illegally suppressed evidence and acted without jurisdiction).

I.    Statute of Limitations

Plaintiff's Amended Complaint focuses on actionable events that occurred as many as thirty-five years ago, beginning with her marriage in 1979.  Her claims are grounded on a potpourri of federal statutes; each that gives rise to a private right of action carries a statute of limitation, none of which is longer than four years.

For example, whether the limitation period is analyzed under Rhode Island or New York law, all of Plaintiff's civil rights claims under both Bivens and 42 U.S.C. § 1983 are time-barred by the statute of limitations if they accrued more than three years prior to July 2, 2013, the filing

date of the initial Complaint.  Barrett ex rel. Estate of Barrett v. United States, 462 F.3d 28, 38

(1st Cir. 2006) (Bivens subject to state statute of limitations); Rodriguez-Garcia v. Municipality

of Caguas, 354 F.3d 91, 96 (1st Cir. 2004) (§§ 1981, 1983 and 1985 borrow forum state's statute

of limitations); R.I. Gen. Laws § 9-1-14(b) (three-year statute of limitations for personal injury

claims); N.Y. C.P.L.R. § 214 (same).  Similarly, her claims based on Title II of Americans with

Disabilities Act, 42 U.S.C. §§ 12131-12165, and on the Civil Rights Act of 1964, Title VI,

Section 601, 42 U.S.C. § 2000d et. seq., are also subject to a limitation period of three years.  See

Toledo-Colon v. Puerto Rico, 812 F. Supp. 2d 110, 119 (D.P.R. 2011) (courts apply either state's

personal injury statute or state's analogous disability discrimination statute); R.I. Gen. Laws §

42-112-2 (three-year statute of limitation for civil rights violation); see also Kassner v. 2nd

Avenue Delicatessen Inc., 496 F.3d 229, 238 (2d Cir. 2007) (applying three-year statute of

limitations to claims under New York State Human Rights Law, NY. Exec. Law § 296, *et seq.*);

Nelson v. Univ. of Maine Sys., 914 F. Supp. 643, 649 (D. Me. 1996) ("Title VI actions, like §

1983 actions, are governed by the state's personal injury statute of limitations.").  Her claim

under RICO, 18 U.S.C. § 1964, must have been brought within four years after it accrued.

Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 156 (1987).

With an Amended Complaint whose core events occurred in 1979, many of Plaintiff's

claims are so stale that there can be no doubt that they accrued prior to July 2, 2009; therefore,

they are time-barred and should be dismissed.  Young v. Lepone, 305 F.3d 1, 8 (1st Cir. 2002)

(complaint may be dismissed for failure to state a claim because it is time-barred if pleader's

allegation leaves no doubt that asserted claim accrued before period permitted by applicable

statute of limitation).  Accordingly, I recommend that all claims in this Amended Complaint be

dismissed with prejudice to the extent that there is no doubt that they accrued prior to July 2,

2009. <u>Newman v. Krintzman</u>, No. 12-1995, slip op. (1st Cir. July 24, 2013) (New York law

considers dismissal of time-barred claim to be on the merits); <u>Torres-Gonzalez v. Miranda-

Marchand</u>, 129 F.3d 1252 (1st Cir. 1997) (unreported table decision) (when statute of limitations

is substantive limitation extinguishing right of action, dismissal is on merits with *res judicata*

effect) (citing <u>Rose v. Town of Harwich</u>, 778 F.2d 77, 80-81 (1st Cir. 1985)).  This includes all

claims related to her marriage, divorce and abandonment by Nigerian Senator Uzamere and all

claims based on judicial decisions and refusals to initiate criminal actions that occurred prior to

that date.

    J.  <u>Defendants Named in the Caption but not in the Body of the Amended Complaint</u>

   Plaintiff's caption rambles on for twenty-five pages naming over five hundred

individuals, sovereigns, entities and agencies.  While the Court did not invest the time that would

be required to search the body of the Amended Complaint to determine which of the hundreds of

Defendants named in the caption are actually mentioned in the body, sufficient work was done to

ascertain that many of those listed in the caption never appear again.  That is, Plaintiff names

them as Defendants but makes no allegation against them.  The vexatiousness of this conduct is

exacerbated by Plaintiff's IFP Motion and her Motion for Special Appointment of a Person to

Serve Process, which seek to compel the expenditure of public funds to serve each of these

individuals and entities against whom she asserts no claim.

   The point is illustrated with several examples.

   Plaintiff names in her caption the "Honorable Sheldon Whitehouse, Individually and in

His Official Capacity as Member, U.S. Senate Judiciary Committee" and the "Honorable Jim

Langevin, Individually and in His Official Capacity as Member, House Permanent Select

Committee on Intelligence."  Amended Complaint at 8, 13.  These two individuals happen to be

members of the Congressional delegation from the State of Rhode Island.  Neither is mentioned

anywhere in the body of the Amended Complaint.  Plaintiff simply lists them and asks for public

funds to serve them.  She does not purport to assert any claims against them.

A second example appears on pages 21-23 of the caption.  Plaintiff names thirty-six

individuals who are described as "Federal Defenders, Federal District of New York" and ninety-

four individuals who are described as "Brooklyn Defender Service."  Not one of these

individuals is mentioned in the body of the Amended Complaint.  Yet, Plaintiff demands access

to the public fisc to serve each and expects each to engage counsel and defend this case in the

District of Rhode Island.[11]  This conduct is particularly malicious when juxtaposed with Judge

Garaufis' warning in Uzamere v. Rice, 08-CV-891 (NGG), slip op. (E.D.N.Y. Apr. 8, 2008) that

her IFP privilege would be denied if she persisted in pressing frivolous claims by naming

improper defendants.  Id. at 8.

Plaintiff's caption is not just populated by important government officials, as illustrated

by a third example.  On pages 20-21 of her caption, she purports to sue (and seeks to serve at

public expense) a psychiatric technician and a registered nurse who work at New York City

Health and Hospitals Corporation.  Neither is mentioned anywhere in the body of the Amended

Complaint.  Nevertheless, Plaintiff asks this Court to serve them and to compel them to defend

this case in Rhode Island.

A final example is the several hundred judges (listed on pages 1-8 and 17-18 of the

caption) who are named in the caption but not mentioned in the body of the Amended

---

[11] Plaintiff's Motion to Hold Action in Abeyance asks this Court to enter a thirty-day stay order during which time these individuals who have nothing to do with her claims are supposed to be compelled to stipulate to transfer the venue of this case to the District of Rhode Island.

Complaint.[12]  Plaintiff explains this with her glib assertion that she named New York judges,

state and federal, for the express purpose of forcing this matter out of New York: "Plaintiff has

deliberately cut off the federal judiciary in the entire State New York because it is corrupt.

Plaintiff's reliance on 28 USC § 1410(a) has its entire basis on Jew-based corruption."  Amended

Complaint at 58.  The deliberate, tactical nature of this action – naming hundreds of judges

(whom she knows to be immune) – to manipulate the venue of the action renders the conduct

malicious, in addition to the frivolousness of suing individuals against whom she has no claim.

It is well settled that the caption is not considered part of the pleader's statement of the

claim for purposes of applying the pleading rules.  Wright & Miller, 5A Fed. Prac. & Proc. Civ.

§ 1321 (3d ed.).  A person or entity can be named in the caption without becoming a party to the

action.  United States ex rel. Eisenstein v. City of New York, 556 U.S. 928, 935 (2009).  In the

absence of substantive allegations, all of the persons and entities who are only named in the

caption are not proper parties in this case.  Redondo Waste Sys., Inc. v. Lopez-Freytes, 659 F.3d

136, 140 (1st Cir. 2011) (defendant named in case caption but not mentioned in body of

complaint "fails the [Iqbal] plausibility test spectacularly"); Laurence v. Wall, No. CA 09-427

ML, 2009 WL 4780910, at *3 (D.R.I. Dec. 10, 2009) (sweeping allegations regarding conduct of

"all defendants" without any additional facts "fail[s] to provide adequate specificity to state a

claim against these defendants, especially given plaintiff's misguided choice to name so many

defendants.").

Accordingly, I recommend that all "Defendants" named in the caption, but not mentioned

in the body of the pleading, be ordered stricken from the Amended Complaint and that all

purported claims against them be dismissed.  Because this tactic of naming Defendants against

---

[12] The body of the Amended Complaint does make charges against certain judges, such as Judge Garaufis of the Eastern District of New York and Judge Sand of the Southern District of New York.  However, most of those named in the caption never appear again.

whom there is no claim and then seeking public funds to serve them is malicious and vexatious, and because of the inappropriateness of burdening this Court with the time-consuming exercise of attempting to identify who are the Defendants against whom there is no claim, I further recommend that the entire Amended Complaint be dismissed.  Attwood v. Singletary, 105 F.3d 610, 613 (11th Cir. 1997) (manipulative tactics are malicious under § 1915A); Castro v. United States, 584 F. Supp. 252, 264 (D.P.R. 1984) (same).

K.  Fed. R. Civ. P. 8

Plaintiff's Amended Complaint fails to comply with the requirement of Rule 8(a) that a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This statement must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see Ashcroft v. Iqbal, 556 U.S. 662, 680 (2009) (complaint must nudge claims from conceivable to plausible).  The complaint must afford the defendant(s) a "['] meaningful opportunity to mount a defense.'"  Diaz–Rivera v. Rivera–Rodriguez, 377 F.3d 119, 123 (1st Cir. 2004) (quoting Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1172 (1st Cir. 1995)).  "[I]n a civil rights action as in any other action . . ., the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why."  Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004).  Although "the requirements of Rule 8(a)(2) are minimal . . .[,] 'minimal requirements are not tantamount to nonexistent requirements.'"  Id. (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)).

While it lays out many facts and much law in staggering detail, Plaintiff's Amended Complaint does not coherently state a comprehensible claim.  It utterly fails to include "a short

and plain statement of the claim." Fed. R. Civ. P. 8(a)(2).  This alone is grounds for dismissal.

See, e.g., Burgess v. Ebay, Inc., CIV.A. 11-10334-RGS, 2011 WL 841269, at *2 (D. Mass. Mar.

8, 2011) (*pro* se plaintiff failed to satisfy Rule 8(a)(2) when "there are so many allegations

contained in the body of the Complaint against a number of defendants, it is virtually impossible

to cull out or identify each cause of action asserted against each, or the basis for any assertion");

Koplow v. Watson, 751 F. Supp. 2d 317, 321 (D. Mass. 2010) (complaint fails to comply with

Rule 8(a)(2) when it "is over 500 pages long and consists of irrelevant cutouts from historical

texts, lengthy harangues on federal and state law, and repetitive descriptions"); Peabody v.

Griggs, CIV.A. 08-243-ML, 2009 WL 3200686, at *4 (D.R.I. Oct. 6, 2009) (Rule 8(a)(2) not met

with rambling, fact-laden, disjointed complaint containing 380 paragraphs, over 73 pages, and

exhibits with 316 additional factual averments).

     Because this Amended Complaint falls so far short of the "short and plain statement of

the claim" required by Rule 8(a) and totally lacks the coherence and plausibility required by

Iqbal and Twombly, I recommend that it be dismissed in its entirety without prejudice.  Laurence

v. Wall, CA 07-066 ML, 2007 WL 1875795, at *2 (D.R.I. June 27, 2007) ("since plaintiff's

complaint violates Rule 8, I recommend that plaintiff's complaint be dismissed without

prejudice").

     L.    Claims Based on a Jewish Conspiracy

     Complaints are frivolous under 28 U.S.C. § 1915 and subject to dismissal when they lack

an arguable basis either in law or fact.  Denton v. Hernandez, 504 U.S. 25, 31 (1992).  Section

1915 gives courts the unusual power to not accept a complaint's factual allegations as true at the

pleadings stage when those factual contentions describe fanciful, fantastic or delusional

scenarios.  See Denton, 504 U.S. at 32.  When a complaint's allegations are "clearly baseless"

because they rise to the level of the "irrational" or "wholly incredible," the court must dismiss a complaint under § 1915(d).  Id.

This Amended Complaint is grounded in Plaintiff's solipsistic belief in a vast Jewish conspiracy focused on her: any judge who issues a decision against her is a conspirator, as is any official who does not act as she demands.  Plaintiff's claim that she is the victim of a Jewish conspiracy involving hundreds of Defendants across cascading levels of local, state and federal government (and including such private citizens as the group of attorneys involved with Nigerian Senator Uzamere, the Daily News and the campaign contributors to Representative Jeffries) is both irrational and wholly incredible.  There are simply no facts in this Amended Complaint to support this beyond her supposition that anyone who has anything to do with her has signed on to a sinister Jewish conspiracy with hundreds of other people.  For this reason, this Amended Complaint should be dismissed at screening.  See Riddles v. Parakh, 08-CV-2373 (NG), 2008 WL 4298318, at *1-2 (E.D.N.Y. Sept. 16, 2008) (broad allegations of vast Jewish conspiracy irrational and wholly incredible; complaint dismissed); Selvy v. Shabazz, CIV.A. 02-CV-72146-D, 2002 WL 31548614, at *1 (E.D. Mich. Oct. 4, 2002) (allegation that defendant was member of Black Muslim sect funded by Islamic and Jewish underworld deemed frivolous; complaint dismissed at screening); Whitehead v. Clinton, CIV.A.99-2891 (PLF), 1999 WL 33326727, at *1 (D.D.C. Nov. 8, 1999) (dismissal as frivolous of rambling complaint hundreds of pages long, alleging conspiracy that included unnamed power brokers of Jewish descent); cf. Czmus v. United States, CA 09-373 S, 2010 WL 438090 (D.R.I. Feb. 4, 2010) (fifty-two page complaint naming 500 defendants alleging Department of Homeland Security spearheaded elaborate and vast conspiracy dismissed as frivolous).

The Amended Complaint's ubiquitous anti-Semitism also raises maliciousness under §

1915(e)(2)(B)(i).  Some quotations illustrate:

- "[A]ll of the judges . . . as defendants in Plaintiff's lawsuit, based on their criminal participation in a religiously-oriented racket, run by a majority-Jewish judiciary, that enforces the Talmudic doctrine *Law of the Moser*,"

- "Plaintiff will no longer tolerate any more of the corrupt, racist, racketeering, justice-obstructing shenanigans of the Jewish defendants."

- "[T]hose Jews' violation of Plaintiff's and other Gentiles' right to privacy is based on the Talmudic doctrine for Jews to enslave Gentiles, with an emphasis on the enslavement of people who are dark-skinned or considered by Jews to be Africans, Cushites, Hamites and Canaanites."

- "The sum total of Plaintiff's living in an atmosphere where predatory Jews make fraudulent reference to real acts of anti-Semitism that took place in the past in order to hide their illegal predation of Plaintiff and her children, based on the encroachment of racist Jewish religious doctrines *Curse of Dark Skin* and *Law of the Moser*, has caused thirty-four (34) years of deprivation of Plaintiff and her family's constitutional, civil, marital, parental, social and financial rights."

Amended Complaint at 58, 60, 110, 125.  This level of vitriol permits this Court to dismiss the

Amended Complaint at screening.  See Pureegiin v. Bd. of Immigration Appeals,

1:07CV100TSE/TRJ, 2007 WL 6097214, at *1-2 (E.D. Va. Mar. 12, 2007) (malicious complaint

dismissed based on plaintiff's long history of vexatious litigation and use of anti-Semitic

invective); cf. In re Martin-Trigona, 737 F.2d 1254, 1259-60 (2d Cir. 1984) (plaintiff enjoined

from filing new lawsuits due to hundreds of previously-filed lawsuits alleging that entire court

system "is manipulated and controlled by Jewish judges and Jewish lawyers"); Jordan v. City of

Miami, Dep't of Police, 720 F. Supp. 1543 (S.D. Fla. 1989) (where allegation in complaint

inspired by plaintiff's racial animus toward black persons, IFP action dismissed as malicious).

I recommend the Amended Complaint in its entirety be dismissed as both frivolous and

malicious because it is based on Plaintiff's irrational and invective-riddled allegations of a vast

Jewish conspiracy.

M.      Filing of Duplicate Allegations and Warnings

A complaint can be malicious under § 1915 when it duplicates the allegations in a

dismissed lawsuit previously filed by the same plaintiff.  Prall v. Bush, CA 10-16 S, 2010 WL

717780, at *5-6 (D.R.I. Mar. 1, 2010); see also Daley v. U.S. Dist. Court Dist. of Delaware, 629

F. Supp. 2d 357, 359-60 (D. Del. 2009); Pittman v. Moore, 980 F.2d 994, 995 (5th Cir. 1993).

Maliciousness justifying dismissal under 28 U.S.C. § 1915(e)(2)(B)(i) is present here because

this Amended Complaint not only is a duplicative filing, but also was filed in deliberate

disregard of many warnings by various state and federal judges in decisions rendered in prior

cases.  See, e.g., Uzamere v. Rice, 08-CV-891, slip op. at 8, and Order at 2 (Plaintiff warned

about filing suits involving her estranged husband in federal court by citing inapplicable federal

statutes, by naming improper federal defendants or by sending the court frivolous, vexatious,

harassing submissions); Uzamere v. Kaye, 09-CV-3506 (LBS) (S.D.N.Y. Apr. 7, 2009) (Plaintiff

warned that "should she continue to file complaints related to her husband, she may be barred

from doing so in the future without first seeking leave of court"), appeal dismissed, Uzamere v.

Kaye, 09-1600-cv (2d Cir. June 24, 2009), cert. denied, Uzamere v. Kaye, No. 09-5816 (U.S.

Oct. 13, 2009); Uzamere v. Uzamere, 957 N.Y.S.2d 639, at *7-9 (N.Y. Sup. Ct. 2010)

(unreported table decision) (Plaintiff warned that "scorched earth policy against defendants must

cease;" Plaintiff enjoined from relitigating same claims and issues against any of the same

defendants in New York United Court System without prior approval by Administrative Justice

or Judge), aff'd, Uzamere v. Uzamere, 933 N.Y.S.2d 336 (N.Y. App. Div. 2011); Uzamere v.

United States Postal Serv., 09-CV-3709 (NGG), slip op. at 2-4 (E.D.N.Y. Oct. 15, 2009)

(Plaintiff warned that she will be precluded from IFP status if she continues to file frivolous

complaints); see also Uzamere v. Cuomo, 11-CV-2831 (NGG) (LB), slip op. at 2 (E.D.N.Y. June

22, 2011) ("Plaintiff has a long, tired history of vexatious litigation in this court"), appeal dismissed, Uzamere v. Cuomo, 11-2713-cv (2d Cir. Nov. 28, 2011), cert. denied, Uzamere v. Cuomo, No. 11-8206 (U.S. Mar. 19, 2012).

Because the duplication between this Amended Complaint and Plaintiff's many prior filings is pervasive and particularly malicious in the face of so many warnings, I recommend that this Amended Complaint be dismissed in its entirety. See Castillo v. Blanco, 330 F. App'x 463, 466-67 (5th Cir. 2009) (under § 1915, cases are appropriately dismissed when evidence exists of bad faith, manipulative tactics or litigiousness).

N.      Venue

Under 28 U.S.C. § 1391(b), venue is proper in the district where any defendant resides as long as all defendants are residents of the same state or the judicial district where a substantial part of the events or omissions giving rise to the claim occurred. When the only two Rhode Island-based Defendants (Senator Whitehouse and Congressman Langevin) are stripped away because there are no allegations in the Amended Complaint against either of them, this Amended Complaint has nothing to do with Rhode Island. While improper venue is not usually a reason to dismiss a complaint at the screening stage, Sinwell v. Shapp, 536 F.2d 15, 19 (3d Cir. 1976); Sandon v. Bureau of Prison, CIV.A. 08-188-ART, 2008 WL 4500227, at *4 (E.D. Ky. Oct. 1, 2008), when Plaintiff has knowingly chosen an improper venue and improperly stacked her Amended Complaint with Defendants against whom she has no claims to avoid the District where venue would properly lie, such manipulation is sufficient to justify dismissal under 28 U.S.C. § 1915(e)(2)(B)(i).

If it belongs anywhere, this case should be in New York; if filed there, it might well be referred by local rule and under 28 U.S.C. §§ 292(b), 636(f) to the non-New York judge who

handles New York cases when there is a massive recusal as Plaintiff has artificially created here by naming every judge in New York in her caption.  It would not be referred to Rhode Island. The obvious inappropriateness of venue in this Court is another reason why this Amended Complaint should be dismissed.  See Cox v. Rushie, CA 13-11308-PBS, 2013 WL 3197655, at *4 (D. Mass. June 18, 2013) (action dismissed on venue grounds under § 1915 when "improper venue is obvious from the face of the complaint and no further factual record is required to be developed").

## IV.   Warning against Filing Additional Frivolous Suits in This District

Plaintiff's Amended Complaint, in the face of her history of filing multiple lawsuits on the same subject in face of repeated warnings, is vexatious and an abuse of this Court.  I recommend that Plaintiff be put on notice (again) that this Court has the power to refuse to grant permission to proceed IFP and to enjoin a party who abuses the court system by filing groundless and vexatious litigation.  Elbery v. Louison, 201 F.3d 427, 1999 WL 1295871 at *2 (1st Cir. Dec.17, 1999) (per curiam); Cok v. Family Court of Rhode Island, 985 F.2d 32, 34 (1st Cir.1993).  I also recommend that Plaintiff be warned that this Court has the authority to impose sanctions on an unrepresented party if she submits a pleading for an improper purpose or if the claims within it are frivolous or malicious.  See Fed. R. Civ. P. 11(b)(1), (2); Eagle Eye Fishing Corp. v. Dep't of Commerce, 20 F.3d 503, 506 (1st Cir. 1994) (pro se parties, like all parties and counsel, are required to comply with the Federal Rules of Civil Procedure); Navarro–Ayala v. Nunez, 968 F.2d 1421, 1426 (1st Cir. 1992) (Rule 11 protects court from wasteful, frivolous and harassing lawsuits, and provides for sanctions as a deterrent).  Costs and expenses, including attorneys' fees, can also be imposed on a person for unreasonable and vexatious litigation under 28 U.S.C. § 1927 and under this Court's inherent power to manage its own proceedings.  See

Chambers v. Nasco, Inc., 501 U.S. 32, 46-50 (1991) (monetary sanctions may be imposed for bad-faith, vexatious, wanton or oppressive behavior); accord United States v. Kouri-Perez, 187 F.3d 1, 6–8 (1st Cir. 1999) (same).

**V.   Conclusion**

To recap, I recommend dismissal with prejudice of the following:

- All claims against federal and state legislators, sued for actions taken in their legislative capacities, federal and state judicial officers, sued for actions taken in their judicial capacities, and prosecutors, sued for actions taken in their prosecutorial capacities, because they are barred by the doctrine of absolute immunity.

- All claims for monetary relief against the United States, all federal agencies and all federal agents, officials and employees sued in their official capacities, because they are insulated from suit by the doctrine of sovereign immunity.

- All claims seeking monetary relief from the State of New York, its agencies and its agents, officials and employees for actions taken in their official capacities, because they are barred by the Eleventh Amendment.

- All constitutional claims against the City of New York, its agencies and officials in their official capacities, because the Amended Complaint lacks specific allegations of a policy or custom.

- All claims based on criminal laws that lack a private right of action, because enforcement of criminal statutes is solely within the discretion of the prosecutor.

- All claims terminated by operation of the bars of *res judicata* and collateral estoppel, including:

  - All claims against Nigerian Senator Uzamere and the group of attorneys who were involved with Plaintiff's marriage, divorce and related immigration issues.

  - All claims against federal, New York State and City officials for failure to report and prosecute Senator Uzamere and the group of attorneys, including claims based on misprision of felony, the Civil Rights Act, the Federal Rehabilitation Act, the Americans with Disabilities Act and RICO.

  - All claims based on the allegation that the Daily News article is defamatory.

- All claims seeking to overturn New York state court judgments because they are barred by the *Rooker-Feldman* doctrine.

- All claims that, on the face of the Amended Complaint, accrued prior to July 2, 2009 (four years prior to the filing of this suit), because they are time-barred.

I further recommend dismissal of the entire Amended Complaint without prejudice based on the remaining grounds set out in this Report and Recommendation.  Although some of the deficiencies in this Amended Complaint conceivably could be cured by an amendment, I do not recommend that this Court grant leave to amend particularly because of Plaintiff's history of frivolous filings and because it is inconceivable that venue over this matter could ever be proper in this District.  In any event, the identified defects requiring dismissal with prejudice are of the caliber that allows this Court to skip that step as fruitless.  Brown v. Rhode Island, No. 12-1403, 2013 WL 646489, at *1, 3 (1st Cir. Feb. 22, 2013) (per curiam).

In addition to recommending dismissal of the Amended Complaint, I recommend that all of Plaintiff's Motions be denied,[13] including her IFP Motion, which should be denied as moot. Finally, I recommend that this Court certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken from an Order adopting these recommendations would not be taken in good faith.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days after the date of service.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

---

[13] I recommend that Plaintiff's Motions should be denied as meritless because of the lack of merit of the Amended Complaint.  I further find that these Motions are independently without merit for reasons not set out in this Report and Recommendation.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
August 26, 2013